# CHARLESTON.

STATE v. L. T. DANSER
(No. 6069)
Rehearing Denied September 11, 1928.

Submitted April 24, 1928.      Decided May 1, 1928.

1.  MOONSHINE LIQUOR—EVIDENCE—*In Prosecution for Unlawful Possession of Moonshine Liquor Evidence Sufficient if it Shows Defendant Owned or Had Dominion or Control Over it.*

    In the prosecution for unlawful possession of moonshine liquor evidence is sufficient if it shows that defendant owned or had dominion or control over it.   (p. 497.)

2.    SAME—*Case in Which Evidence is Sufficient to Warrant Sub-
      mission to Jury and to Warrant Conviction.*

      A case in which the evidence is sufficient to warrant sub-
      mission to a jury and to warrant conviction.    (p. 499.)

Error to Circuit Court, Monongalia County.

L. T. Danser was indicted for unlawful possession of moon-
shine liquor and he brings error.

*Affirmed.*

*Eugene H. Long,* for plaintiff in error.

*Howard B. Lee,* Attorney General, and *R. A. Blessing,*
Assistant Attorney General, for the State.

WOODS, JUDGE:

L. T. Danser was indicted jointly with Charles Helfrick,
Robert Moore and Russell Tennant, at the April 1927 term
of the circuit court of Monongalia county, on the charge of
unlawfully having moonshine liquor in their possession.
Danser was tried separately at the same term of court and
found guilty by the verdict of a jury of the offense charged.
From the judgment and sentence rendered against him on
the verdict, he brings error to this Court.

On the evening of February 23, 1927, deputy sheriffs, Carl
Beebe and George Schenick, having information that a Chev-
rolet touring car containing a quantity of moonshine liquor
had that evening been driven into a garage at Richwood
Avenue, Morgantown, armed with a search warrant, went to
the garage. Both state that the five five-gallon and the six
one-gallon cans of liquor found were piled on the floor of the
car between the front and back seats and on the back seat,
and that the same were but partially concealed from view by
the side curtains which had been placed over them. The
officers, after gaining admittance, stationed themselves in the
garage for the purpose of apprehending the parties to whom
the liquor belonged. About five o'clock the following morn-
ing, Danser, Helfrick, Moore and Tennant came to the garage.
All four had been at the Danser home a few minutes before.
They rode down in Tennant's car, passed the garage, turned,

came back and parked across the street from it. After this the four finally succeeded in getting into the garage through a side door, the defendant and Tennant being the first to enter. The side curtains were removed from the liquor and put up on the sides of the car. Defendant assisted the other three by use of his flashlight. Tennant and Moore got into the car, while Helfrick opened the door, and the defendant, by the use of his flashlight, directed the way out. The arrest was made just after the men began to move the car from the garage. Defendant and each of his companions deny knowledge of the presence of any liquor in the car.

Defendant's counsel argues that there is nothing in the evidence to show that the defendant had control of the liquor or that he had knowledge of its presence in the car—conditions, he argues, which are made necessary to the crime of unlawful possession. Ownership is not a necessary element in the guilt of one charged with its unlawful possession. *State* v. *Edgell,* 94 W. Va. 198. Possession means simply the owning or having a thing in one's own power. *Bryson* v. *McShane,* 48 W. Va. 129, 49 L. R. A. 527; *Brown* v. *Volkening,* 64 N. Y. 80. It implies a present right to deal with the property at pleasure and exclude other persons from meddling with it. "By the possession of a thing, we always conceive the condition in which not only one's own dealing with the thing is physically possible, but every other person's dealing with it is capable of being excluded." Bouvier's Law Dictionary. This was quoted in *Lumber Company* v. *Lumber & Mining Company,* 51 W. Va. 554, 66 L. R. A. 33. Possession by two persons jointly as well as one person alone is within the statute. 33 C. J. 580, and note 14 (d), citing cases. The four men were together. Tennant, who is a brother-in-law of Danser, and Moore had stayed that night at Danser's home. Danser and Helfrick, who had been to Uniontown, met them at the former's home shortly before 4:40 that morning. The four left the house at that time and went to the garage together. Tennant states that he saw his brother, Burl Tennant, driving the car the day before, and admits that he (the witness) "was with the fellow that put it [the car] in" the garage, between seven and eight o'clock on

the evening before. After gaining admittance to the garage through a side door instead of the front door to which Tennant had secured a key the night before, the four men engaged themselves in putting the side curtains up on the sides of the car, Danser assisting by holding a flashlight. According to the officers, Danser was all around the car, and he, as well as the other three, must have known of the presence of the "cargo" of liquor. Danser is admittedly the only one of the four that had a flashlight. He was between five and ten feet behind the car, and, according to his own testimony, "was assisting in getting the car out of the garage", at the time of the arrest. Then, again, no reasonable explanation is given for the presence of the four men at the garage at that unusual hour of the morning. Their actions, and all the surrounding circumstances, give rise to a natural and legal presumption that they knew of the presence of the liquor and intended to and were exercising dominion over the same. Although some one other than Danser may have placed the car and liquor in the garage, yet if he knew of the liquor's presence—and it is evident that he did know it—his conduct with reference to it might properly be such as to charge him, together with the others, with its joint possession. The circumstantial facts, established by direct evidence point unerringly to the defendant's guilt of the crime charged in the indictment, and the jury, by their verdict, have so found.

The defendant, while not challenging the statements of law embodied in the two State's instructions objected to, does insist that there was no evidence in the case upon which they could be based. However, as we have interpreted the evidence, we believe that there was sufficient evidence to warrant the giving of such instructions.

At the conclusion of State's evidence in the trial of Russell Tennant, which immediately preceded the instant case, upon motion of Tennant's counsel to direct a verdict (strike out evidence) the court on ruling thereon said, according to an affidavit made by Danser in support of the latter's motion for a continuance, "that the four men went to a certain garage on the morning of February 23, 1927, for some purpose, and that it was quite evident that they went there for the

*purpose of transporting* the moonshine with which the said Russell Tennant was being charged for transporting.'' These words were spoken in ruling on the motion to strike out. Thereafter the defendant put in his evidence and the jury acquitted the defendant Tennant. That the words of the court did not prejudice the jury in the case then on trial is indicated by his acquittal. The words were properly spoken on passing on the motion to strike the evidence. It was not the case made upon which the jury passed upon which the court expressed his opinion. Under such circumstances it could not reasonably be inferred that Danser was prejudiced by such remark of the court made in the presence of the panel of jurors from which the jury which tried him was taken thereafter.

Perceiving no reversible error in this case, we affirm the judgment.

*Affirmed.*