# Richmond

## J. L. Rule v. The First Nat'l Bank of Clifton Forge, Va., Exor.

January 24, 1944.

Record No. 2727.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*J. W. C. Johnson*, for the appellant.

*J. C. Goodwin* and *J. M. Perry*, for the appellee.

HUDGINS, J., delivered the opinion of the court.

This suit involves the construction of the will of E. P. P. Rule, executed on December 20, 1940, and probated on February 12, 1942. Its provisions, without the formal parts, are as follows:

"FIRST: I direct that all my debts and funeral expenses be paid as soon after my decease as *conviently* can be done.

"SECOND: I give devise and bequeath to my wife Estella May Rule, all of my estate, real, personal, and mixed of which I may die seized or possessed with full power to dispose of same, but if the said real estate remains undisposed of at the time of my said wife's death, then I direct that the

said real estate shall in that event go to my sister Mrs. H. D. Saunders.

"THIRD:   I direct that whatever money or personal estate, hereby devised to my said wife, which shall remain undisposed of at the time of my said wife's death shall go to my brother, J. L. Rule.

"FOURTH:   Should my said wife dispose of the said real estate hereby devised, during her life time, and in that event whatever remains from the proceeds of said sale of said real estate, if anything, whether the same be money or other property, shall go to my sister Mrs. H. D. Saunders.

"I hereby nominate and appoint The First National Bank of Clifton Forge, Virginia, Executor of this my last will and testament and whereas my said wife, on account of her physical condition, is not capable of looking after her personal needs, my said Executor is hereby authorized and empowered to dispose of all said real estate whenever in its judgment the same may be necessary for the maintenance and support of my said wife in a manner commensurate or suitable to her situation and station in life."

J. L. Rule and Mrs. H. D. Saunders, brother and sister of the testator, contend that the will devised and bequeathed to the widow a life estate only in the property of the testator, and not a fee simple in the real estate and absolute property in the personalty, as contended by the executor and the widow.   The trial court upheld the contention of the executor and entered a decree accordingly.   From that decree J. L. Rule prosecutes this appeal.

It appears that the real estate mentioned in the will was the residence in Clifton Forge.   The deed to this property, when originally purchased, conveyed it to the wife and not to the husband.   These facts eliminate any possible rights of Mrs. Saunders to any property mentioned in the will.

The cardinal rule of construction is that the intention of the testator must be determined from what he actually said and not from what it may be supposed he intended to say.   If the meaning of the language used by the

testator is clear, the will needs no interpretation. It speaks for itself.

██ ██ Under well settled rules of construction in this jurisdiction, the will as presented is not ambiguous. Since the decision (1871) in *May* v. *Joynes,* 20 Gratt. (61 Va.) 692, it has been consistently held that, where a person is given absolute dominion over property, followed by a gift over to another "of what remains undisposed of at her death" or "such part as may not be appropriated," a fee simple in real estate and absolute estate in personalty passes to the first taker. The gift over is void for uncertainty. Many of the cases so holding were reviewed by Judge Saunders in *Davis* v. *Kendall,* 130 Va. 175, 107 S. E. 751. However, in *Davis* v. *Kendall,* the distinction was pointed out between the provisions of a will devising property to the first taker for life with a power of appointment of the reversion, and the provisions of a will giving the first taker absolute dominion over the property either for support and maintenance or for purposes not stated. It was said, at page 195: "In other cases the fee is given directly or by implication, though the purpose thereof is not stated; but the fee, in terms or by necessary implication, is lodged in the first taker without restrictions, and may be simply and readily used by him for support, or for any other purpose. The donee in many cases is not restricted to a life estate, for the manifest reason that it is clearly the intention of the donor for the fee to pass. Hence, this intent is made effective by the court.

"'The estate conveyed being the testator's, his will is the law of the court, unless that will be against the law of the land.' Hence, when he plainly intends a fee, even though the testator's expression is inartificial, a fee is given, but his intent to limit a remainder on a fee is avoided, not that the court fails to perceive the intent, but because it is against the law." *Hunter* v. *Hicks,* 109 Va. 615, 64 S. E. 988; *Conrad* v. *Conrad,* 123 Va. 711, 97 S. E. 336, and cases cited in note on page 722. Among the more recent cases are *Skinner* v. *Skinner,* 158 Va. 326, 163 S. E. 90; *McKinsey*

v. *Cullingsworth,* 175 Va. 411, 9 S. E. (2d) 315; *Moore* v. *Holbrook,* 175 Va. 471, 9 S. E. (2d) 447.

Construing the language used by the testator in the will under consideration, in the light of the principles applied by the long line of cases cited, we find no doubt or ambiguity. The testator, in express terms, gave his wife all his property "with full power to dispose of same" without restriction. " 'The power of absolute disposition is the eminent quality of absolute property.' He who has absolute power over an estate thereby acquires the absolute property. Hence, the conclusion of the court, *supra,* with respect to the character of the estate taken by the devisee, merely makes effective the manifest primary intent of the testator. But the secondary intent of the testator to dispose of any portion of the fee unused, or unappropriated by the devisee for her purposes, is frustrated by the court which holds that the limitation over of whatever remains at the death of the wife is inconsistent with, and repugnant to the fee simple, and, therefore, void for uncertainty." *Davis* v. *Kendall, supra,* at pages 181-2.

The doctrine in *May* v. *Joynes, supra,* was first modified by statute in 1908 (Acts 1908, p. 187). This statute was clarified by the 1919 Code revisors (Code 1919, sec. 5147). Now, its application is limited to the property that remains after a life estate with power in the life tenant to dispose of such property if he desires. See *Skinner* v. *Skinner, supra; McKinsey* v. *Cullingsworth, supra; Moore* v. *Holbrook, supra.*

Appellant contends that the extrinsic evidence introduced by him clearly shows that the testator intended to devise and bequeath all of his property to his wife for life with the right to use all the principal, if necessary for her support and maintenance; and that the gift over, of any part of the property remaining undisposed of at the death of his wife, is valid under the provisions of the statute (sec. 5147).

The extrinsic evidence relied upon tended to show that (1) at the time the will was executed the husband and wife were old and childless; (2) in 1928 each executed a will

naming the other as the sole beneficiary of his or her estate; (3) neither desired the wife's relatives to inherit or otherwise obtain any of the property owned by them; (4) prior to 1940 the wife became mentally incompetent and indications were that she would remain so the rest of her life; (5) the husband knew that, if his wife outlived him, under. his will as written she would become the absolute owner of all his property; (6) his wife did not have sufficient mind to destroy her will with intent to revoke it or to execute a new will; (7) he informed his attorney of all these facts and instructed him to draft a new will which would give his wife the right to use all of his property for support, maintenance and comfort so long as she lived, and that, if any remained undisposed of at her death, it should pass to his named brother and sister; and that (8) the attorney, in drafting the will, by an oversight failed to insert, after the name of the wife in the second paragraph, the words "a life estate in."

The proper use of extrinsic evidence in aid of the interpretations of wills may be regarded as reasonably well settled. It cannot be used at all if the will is plain and unambiguous, for "it is not permitted to interpret that which has no need of interpretation." *Coffman* v. *Coffman*, 131 Va. 456, 461, 109 S. E. 454.

"Professor Charles A. Graves made a valuable contribution to the law on this subject in a paper which he read at the annual meeting of the Virginia State Bar Association in 1893, published in Vol. VI of the Bar Association Reports, page 183 *et seq.*; also published in 14 Va. Law Reg. page 913 *et seq.* He divides the extrinsic evidence which may be offered in aid of the interpretation of a will into two classes and says: 'Of these the first consists of material facts, and these may concern the testator, his property, his family, the claimant or claimants under the will, their relations to the testator, &c. The second class, on the other hand, is confined to direct evidence of the testator's actual intention, such as his declarations of intention, his informal memoranda for his will, his instructions for its preparation, and his state-

ments to the scrivener or others as to the meaning of its language. And this division of extrinsic evidence not only exists in the nature of the case, but is of the utmost practical importance in the interpretation of wills, as the rules for the admissibility of the two kinds of evidence are not the same. Let us call the first kind *the facts and circumstances*, and use the expression *declaration of intention* to describe all extrinsic statements by the testator as to his actual testamentary intentions—i. e., as to what he has done, or designs to do, by his will, or as to the meaning of its words as used by him.' " *Coffman* v. *Coffman, supra*, at page 462.

The extrinsic evidence introduced is within both classifications made by Professor Graves. The vital part falls within the second class, denoted "declarations of intention." As to the consideration of this class of evidence, Professor Graves said, at pages 463-4: " 'There is but one situation in which the judicial expositor has the right to invoke the aid of declarations of intention, and that is where the words in the will describe well, but equally well, two or more persons or two or more things, and such declarations are offered to show which person or which thing was meant by the testator—i. e., by the words in the will as used by him.' This situation he describes as a case of 'equivocation,' and his conclusion with respect thereto, is fortified by citation of authorities, and is followed by a most instructive and interesting discussion and explanation of what will constitute equivocation, and the reasons why the evidence of the testator's declarations as contrasted with evidence of the facts and circumstances surrounding him is so narrowly restricted in its use."

The language of the will under consideration presents no question of equivocation. There is no uncertainty as to the property mentioned or described. There is no doubt or uncertainty as to the parties named as beneficiaries.

"Declarations of intention are receivable, therefore, in one case only, and that is when each of a plurality of subjects or objects follows and fills out the description in the

will, and when declarations in favor of either will accord with the words in the will. In all other cases they are rejected, as the law will not permit verbal declarations to influence the construction of the will, much less to compete with the written declarations contained therein. As has been well said: 'Evidence so nearly allied in character to that furnished by the will itself 'presents an aspect of rivalry to the will which raises a presumption against its reception. * * * Again, evidence of this kind presents peculiar facilities to fraud. It may easily be imagined or invented; and, when fraudulently produced, is difficult of detection. If a witness swears that a deceased testator, in a private interview, explained to him the sense in which he wished some clause of his will to be understood, such evidence, however false, cannot possibly be disproved.' " 14 Va. Law Reg. 929.

Appellant, in effect, contends that the court has power, on the testimony of the scrivener, to amend the will by interpolating language not employed by the testator, thereby devising and bequeathing to the first taker a different and less estate than that bequeathed and devised by the will as written. If this contention is sustained, the pertinent part of the will, with the words sought to be added in italics, would read as follows: "I give devise and bequeath to my wife Estelle May Rule, *a life estate in* all of my estate, real, personal, and mixed of which I may die seized or possessed with full power to dispose of same, * * * ." Such an amendment would convert a fee simple in real estate and an absolute estate in personalty into a life estate.

Numerous authorities are cited and quoted in the briefs showing the efforts of various courts to determine the intention of the testator, but no authority is cited which permits an amendment to be made to the will by interpolating additional words, thereby changing the result from that clearly expressed by the words used by the testator. Frequently wills are explained by the light of surrounding circumstances, but a party seeking to maintain a devise or bequest must show it by the will itself. The pertinent inquiry

is not what the testator meant to express but what the words used do express. *Burke* v. *Lee,* 76 Va. 386; *Senger* v. *Senger,* 81 Va. 687.

Appellant further contends that, inasmuch as the testator knew his wife was mentally incompetent, he did not intend to give her the absolute power of disposition of any part of his estate.

█ Infants and incompetents may own the fee simple in real estate and the absolute property right in personalty. Various statutes provide the procedure by which such property may be alienated for the benefit of the owners. The testator himself, in next to the last paragraph of the will, recognizes the condition of his wife and authorized his named executor to dispose of his real estate for her benefit in these words: "* * * and whereas my said wife, on account of her physical condition, is not capable of looking after her personal needs, my said Executor is hereby authorized and empowered to dispose of all said real estate whenever in its judgment the same may be necessary for the maintenance and support of my said wife in a manner commensurate or suitable to her situation and station in life."

It is to be noted that the wife was given full power without restriction to dispose of all of the property passing under the will. On the other hand, the executor was restricted in his power to dispose of the real estate to one purpose only; i. e., "for the maintenance and support" of the wife.

█ Extrinsic evidence of declarations of intention may not be invoked to aid the construction of a will where no question of equivocation is presented.

The decree is

*Affirmed.*