# Richmond

## TRUSTEES OF DUNCAN MEMORIAL METHODIST CHURCH v. J. ENOS RAY, ADMINISTRATOR, &C.

March 15, 1954.

Record No. 4183.

Present, All the Justices.

The opinion states the case.

*Beecher E. Stallard* and *Ellen Morris Keene,* for the appellant.

*Carrington Williams* and *C. Denny White,* for the appellee.

SMITH, J., delivered the opinion of the court.

This proceeding involves the construction of the holographic will of Armistead T. Ford, dated October 4, 1939, and duly probated on January 22, 1942. The will reads as follows:

"My last will.

"I, A. T. Ford request that my wife Eva Clyde Ford take immediate possession of my home, with its contents—also all stock—money in bank—and every thing that stands in my name.

"My wife is to see every thing I may owe, be paid.

"At my wife death, the remainder of what may be left, is to be divided equally between the Methodist Orphanage, Richmond, Va. and the Methodist Church, Ashland, Va.

"No appraisement or security is required of my wife, she to have full control her life time.

A. T. FORD, . . . (SEAL)"

The administer *d.b.n., c.t.a.* of the estate of A. T. Ford brought this suit after the widow and executrix, Eva Clyde Ford, died intestate and without issue on November 18, 1950. The prayer of the bill asked for a construction of the will "as to whether the remainder over to the Methodist Orphanage of Richmond, Virginia, and the Methodist Church of Ashland, Virginia, is a valid remainder over or whether the said Eva Clyde Ford acquired a fee simple title to the estate of the said A. T. Ford by his last will."

At the death of Eva Clyde Ford there remained of the estate of the testator undisposed of, a house and lot together

with stock in various corporations worth approximately $5,000, all of which were in the name of A. T. Ford, no change in record title having been made by the widow. The record before us does not disclose whether the testator owned any other property, or the extent of his debts at the time of his death.

Only one question was presented to the trial court, that is, whether the widow was given a life estate in the property bequeathed and devised by the testator or whether, as contended. by her heirs at law, she took a fee simple estate in the real property and an absolute estate in the personal property. The trial court, by its decree, upheld the contention of her heirs. To review that decree this appeal was awarded the trustees of Duncan Memorial Methodist Church, Ashland, Virginia, hereafter referred to as appellant.

Appellant contends first, that a life estate was given to the widow with remainder over to the Church and Orphanage and that no absolute power of disposal was given the life tenant. Its second contention is that the testator intended to create "a fiduciary relationship, something in the nature of a trust," and that therefore his wife received nothing except the duty and responsibility of paying his debts. The issue is thus raised as to whether the language of the will vested the widow with full and absolute power of disposal of the property or whether a life estate without such power was created with remainder over to the two institutions.

In construing a will two inquiries are to be made: First, what is the intention of the testator as expressed by him in the words he has used? His intention is the animating spirit, the essence and soul of the will. His language is the vehicle used to convey his intention which, when ascertained, is the governing principle, and must prevail, unless it violates some rule of law. Thereafter, the second inquiry is whether there is any rule of law which prevents the intention expressed by the testator from being given effect in

whole or in part. *Sheridan* v. *Krause*, 161 Va. 873, 172 S. E. 508.

In this first inquiry, the intention of the testator must be gleaned from the entire will by examining and comparing all of its provisions in the light of surrounding circumstances in order to ascertain the general plan and purpose of the testator if there be one. *E. g., Arnold* v. *Groobey*, 195 Va. 214, 77 S. E. (2d) 382; *Blanks* v. *Jiggetts*, 192 Va. 337, 64 S. E. (2d) 809; *Jobe* v. *Jobe*, 192 Va. 127, 63 S. E. (2d) 726.

The testator's express plan for disposing of his property was, (1) for his wife to take "possession" and "full control" of all of his property, (2) pay his debts, (3) and then after she had exercised her "possession" and "full control her life time," "the remainder of what may be left" was to pass equally to the named Methodist institutions. The testator used expressions such as, "her life time" and "at my wife death" which, appellant admits, do not create an express estate for life.

If we are to heed precedents which are deep rooted in many decisions, we must go further and determine from the language used whether the testator intended to give his wife the absolute power of disposition of all his property. *E. g., Southworth* v. *Sullivan*, 162 Va. 325, 173 S. E. 524; *Moore* v. *Holbrook*, 175 Va. 471, 9 S. E. (2d) 447. See also, *Hanks et al.* v. *McDanell*, 307 Ky. 243, 210 S. W. (2d) 784, and the extensive annotation appended thereto in 17 A. L. R. (2d) 1; 34 Va. L. Rev. 846 (1948).

In our examination of the will and its attending circumstances we are unable to conclude that the testator intended to give his wife nothing whatsoever except the duty and responsibility of a fiduciary, as argued by appellant, whose only function was to pay his debts and then to place the remaining property in a complete state of limbo to await her death. See Lile's Notes on Equity Jurisprudence, p. 42. In any event, such debts would have had to be paid regardless of whether the testator so provided. On the other hand,

it is more reasonable and in keeping with the testator's intention to conclude that his wife was his first and foremost concern to be fully and amply cared for during her life; to that end he gave her "full control her life time" of all his property so that she could use it for her needs or as she saw fit and without any limitation whatsoever. It is clear from the use of the phrase "the remainder of what may be left" that the testator gave to his widow absolute power of disposal.

Having thus determined that the testator's primary intention was to give his wife possession of and full power of disposal of his property, we are brought to the second inquiry as to whether there is any rule of law which prevents us from giving effect to his secondary intention to give to the named remaindermen "the remainder of what may be left" at her death.

In *Burwell's Ex'ors* v. *Anderson, Adm'r &c.*, 3 Leigh 348, 355 (Va. 1831), it was said: "From the earliest time, it has been among the received doctrines of the common law, that an absolute and unqualified power of disposing * * * should be construed as a gift of the absolute property. In this the law but corresponds with the dictates of common reason. Every man of ordinary capacity would understand a power to dispose of a thing as he pleased, as a gift of the thing itself; and hence, everyone who uses the phrase without qualification, is understood by the law as intending a gift. The power of absolute disposition is, indeed, the eminent quality of absolute property."

At common law, if an estate be given to one, though for life only, with full and absolute power of disposition of the property, since this is equivalent to the fee simple, there could be no valid remainder limited after his estate. All the more is this true where the estate is given to the first taker *generally*, without expressly stating that it is for his life, and is followed by the absolute power of disposition. No remainder can be limited after a vested fee simple. This results from the nature of things as well as from the

definition of a remainder. There can be no remnant after a fee simple, which is all. 1 Minor on Real Property, §§ 158, 707, pp. 217, 925 (2d ed., Ribble, 1928).

Where there is a devise or bequest to one in *general terms* and there is a subsequent limitation over of what remains at the first taker's death, if there is also given to the first taker an unlimited and unrestricted power of absolute disposal, express or implied, the devise or bequest to the first taker is construed to pass a fee, and the limitation over is invalid. *E. g., Crisman* v. *Swanson*, 193 Va. 247, 68 S. E. (2d) 502; *Carr* v. *Effinger*, 78 Va. 197.

Illustrative of the language held to imply the power of absolute disposal and thus a fee simple in the first taker are the following: "at their death the balance, if any, to their children," *Hall* v. *Palmer*, 87 Va. 354, 12 S. E. 618; "what may remain of the same," *Farish* v. *Wayman*, 91 Va. 430, 21 S. E. 810; "if there is any left after their death," *Brown* v. *Strother*, 102 Va. 145, 47 S. E. 236; "if at my wife's death there remains anything," *Steffey* v. *King*, 126 Va. 120, 101 S. E. 62; "such remaining part of this bequest as she shall die possessed of, if any," *Skinner* v. *Skinner*, 158 Va. 326, 163 S. E. 90.

There is also the rule of common law that where property is granted or given to a person for life, and afterwards there is conferred upon him, either in express terms or by implication, the full power to dispose of the property, he is thereby vested with an absolute estate in the property, and the gift over of so much of the property as he shall not dispose of is void. *May* v. *Joynes*, 20 Gratt. (61 Va.) 692. These rules, both as to gifts in general terms and gifts for life are usually discussed under the doctrine of *May* v. *Joynes*, which doctrine this court has had occasion to consider in numerous decisions. *Crisman* and *Southworth* cases, *supra*. See also *Borum* v. *The National Valley Bank of Staunton*, this day decided.

It would be unfruitful to restate the history of this principle for it has been stated by Mr. Justice Buchanan in the

recent case of *Crisman* v. *Swanson, supra,* in this concise language: "The doctrine of *May* v. *Joynes, supra,* was abolished by Chapter 146, Acts 1908, page 187 (*Southworth* v. *Sullivan,* 162 Va. 325, 173 S. E. 524), which act was in turn modified by section 5147 of the 1919 Code, now section 55-7 of the 1950 Code, but the statute applies only to estates expressly granted for life * * * ."

In *Blanks* v. *Jiggetts, supra,* and *Voigt* v. *Selander,* 190 Va. 638, 58 S. E. (2d) 25, relied on by the appellant, the gifts to the first takers were held express estates for life and therefore Code, § 55-7 validated the gifts over. In the instant case it is conceded that testator did not give his wife such an estate and therefore the statute has no application. See *Borum, Moore* and *Southworth* cases, *supra; Hall* v. *Hoak,* 184 Va. 821, 36 S. E. (2d) 567; *Rule* v. *First Nat. Bank,* 182 Va. 227, 28 S. E. (2d) 709.

Appellant also relies on *Roller* v. *Shaver,* 178 Va. 467, 17 S. E. (2d) 419, in which it was held that the devise to the first taker was a life estate with a limited power of disposition, but this holding was based on the fact that the word "use" appearing in the will "does not import any power of disposition of the corpus * * * but its meaning denotes the contrary." No limiting language is employed in the will of A. T. Ford and he did not intend that his widow be limited in her "full control" of his property.

It is clear from the will that no express estate for life was created but that the wife was vested with absolute power of disposal of all of the testator's property. She therefore took a fee simple in the real property and an absolute estate in the personal property. The attempted disposition after the death of Eva Clyde Ford, though motivated by worthy intentions, is ineffectual and void because the law does not recognize any estate to be limited after a fee simple has been given.

The decree appealed from is correct.

*Affirmed.*