# Richmond

## Oscar J. Borum, Et Al. v. The National Valley Bank of Staunton, Executor, etc., Et Al.

March 15, 1954.

Record No. 4168.

Present, Hudgins, C.J., and Eggleston, Spratley, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Whitehead & Marshall, Robert Whitehead, Robert L. Marshall* and *Annie M. Fallwall,* for the appellants.

*J. M. Perry* and *Lyle G. Weller,* for the appellees.

SPRATLEY, J., delivered the opinion of the court.

This case involves the proper construction of the last will and testament of Robert E. Borum, who died in February, 1936. The will consisted of a paper writing dated March 9, 1926, and a codicil thereto dated February 4, 1933. The will was duly admitted to probate on February 24, 1936, and Lizzie L. Borum, the executrix named therein, qualified as such. The personal estate of the testator was appraised at $19,173.90, and his real estate at $3,000, a total of $22,173.90.

The material portion of the instrument dated March 9, 1926, provides:

"2d. After the payment of all my just debts I will devise and bequeath to my beloved wife, Lizzie L. Borum all of my estate of every description, Real, Personal and mixed to be her absolute estate."

He next requested, but did not require, her to give to the First Baptist Church of Staunton, Virginia, and the Baptist Orphanage at Salem, Virginia, $500 each.

On February 4, 1933, the testator added a codicil to the above will. It reads as follows:

"I, R. E. Borum, being of sound mind and disposing memory, do make this the first codicil to my last will and testament executed on the 9th day of March, 1926. I will bequeath and devise all of my property, personal, real and mixed to my wife for and during her natural life with full power and authority to consume or dispose or sell and convey all or any of said property as she may see fit in her sole discretion and any of said property real or personal that may remain in her possession at the time of her death, I will,

devise and bequeath to my heirs at law and distributees as provided under the Virginia Statute of descent and distribution. I hereby to the extent of this codicil modify and revoke my will as heretofore written in so far as may be necessary to do so, to carry this codicil into effect. I further nominate, constitute and appoint my friend, Harry Burnett, Co-executor with my wife, Lizzie L. Borum. Given under my hand and seal this 4th day of February, 1933."

The executrix made but one statement of her account with the estate, which was recorded on June 23, 1937. It shows payment of the two sums of $500 above mentioned, and that the personal estate thereafter aggregated $17,031.50. A house and lot on Thornrose Avenue belonging to her husband was valued at $3,000. $908.18 was shown to be due the executrix, leaving the net personal estate valued at $16,123.37.

On January 9, 1941, G. W. Crosby and wife conveyed to Lizzie L. Borum a parcel of real estate known as 1007 Spring Hill Road in Staunton, Virginia, for a consideration of $4,500. On October 20, 1943, Lizzie L. Borum conveyed the house and lot on Thornrose Avenue, belonging to her husband's estate, for $5,300. She deposited $5,000 of the purchase price, the net proceeds after payment of expenses of the sale, to her account as executrix in the National Valley Bank of Staunton. Two days later she distributed $4,983 of the proceeds among the nieces and nephews of her husband.

Mrs. Borum was thereafter adjudged incompetent and on June 19, 1947, the National Valley Bank of Staunton qualified as her committee, and continued to act as such until her death. She died July 5, 1949, leaving a will dated September 16, 1944. The will was duly probated and the National Valley Bank of Staunton qualified as executor thereof.

The testatrix made specific bequests amounting to $1,250, and left the residue of her estate to the trustees of the First Baptist Church of Staunton, Virginia. Her personal estate

was appraised at $7,545.59, and her real property, including that known as 1007 Spring Hill Road, was valued at $18,500, a total of $26,045.59.

The Spring Hill Road property which Mrs. Borum had acquired in 1941 for $4,500 was sold by her executor for $10,500, and the proceeds credited to her estate.

After the death of Mrs. Borum, there was found on deposit in the National Valley Bank of Staunton $3,590 to the credit of "Lizzie L. Borum, Extr." In a safety deposit box of Mrs. Borum in that bank there was an envelope marked "R. E. Borum Estate." In this envelope were two United States Savings Bonds, Series "G", issued October, 1942, registered in the name of "Mrs. Lizzie L. Borum, Executrix of the Estate of Robert E. Borum, deceased," with a maturity value of $1300; two coupons for $16.25, interest on the said savings bonds; and a deed of trust bond, payable to the order of Lizzie L. Borum, Executrix of Robert E. Borum, upon which there was due the sum of $6,000.

The unadministered estate of Robert E. Borum, was committed on July 1, 1950, to R. L. Shaver, Sheriff of Augusta County, as administrator d. b. n. c. t. a. The National Vally Bank of Staunton, executor of Mrs. Borum, thereupon delivered to the administrator d. b. n. c. t. a. the cash and securities above mentioned.

On April 9, 1951, appellants instituted this proceeding alleging that they were the heirs and distributees of Robert E. Borum, and that as such were entitled, under the codicil to his will, to all of his property that remained in the possession of his widow at the time of her death. They included in their claims the property found at the National Valley Bank of Staunton, in the name of the executrix and the R. E. Borum estate, the sum of $2700, alleged to have been retained by Mrs. Borum from the sale of the real property of her husband, and the $6,000 profit realized from the sale of the Spring Hill Road property, formerly purchased by Mrs. Borum. They prayed that the will of Robert E. Borum be construed; that the assets of his estate be collected, administered, and distributed under the guid-

ance of the court; and that the administrator d. b. n. c. t. a. of said estate be guided and directed in the administration and distribution of the estate. The executor of the estate of Lizzie L. Borum and the trustees of the First Baptist Church of Staunton, the residuary legatee under her will, filed answers denying that appellants were entitled to any part of the estate of Robert E. Borum and claiming that Lizzie L. Borum acquired his entire estate absolutely and in fee simple.

The administrator d. b. n. c. t. a. of the estate of Robert E. Borum answered, listing the assets in his hands as having a valuation at that time of $11,265.66, united in the prayer of the bill of complainants and requested the guidance and direction of the court in the performance of his duties.

The depositions of witnesses were taken, and the cause submitted to the court. Upon consideration, the trial court held that Lizzie L. Borum took a fee simple title to her husband's real estate and an absolute estate in his personal property, directed that the assets in the hands of the administrator d. b. n. c. t. a. be paid over and delivered to her executor, and dismissed the bill of the complainants.

We granted this appeal.

The principal questions for our consideration are whether the heirs at law and distributees of Robert E. Borum are entitled, as remaindermen, under § 5147 of the Code of 1919, now § 55-7 of the Code of Virginia, 1950, to that portion of his estate which was not disposed of by the life tenant, during her lifetime by virtue of the codicil to his will, and, if so, what property passed to them?

The appellees contend that the attempted limitation over of such property as "may remain in her possession" at the time of the life tenant's death, is not within the terms of § 55-7, that the words "in her possession" are ambiguous, and that the limitation over is repugnant to the preceding provision of the codicil and, moreover, void for uncertainty. They argue that Mrs. Borum was not personally possessed of the property of her husband's estate at her death, but

held it in her capacity as executrix. They insist that for the limitation in remainder over to be valid, it should have been phrased in language which passed title to such property as the life tenant had not disposed of prior to her death. They devote much of their brief to the meaning of the word "possession."

It is conceded that at common law, under the doctrine of *May* v. *Joynes,* 20 Gratt. (61 Va.) 692, Lizzie L. Borum would have taken fee simple title to her husband's real estate and an absolute estate in his personal property, and the attempted gift over of the remainder would have been void for repugnancy and uncertainty. That situation is avoided only in the event that Code, § 55-7 is applicable to the provision of the codicil to testator's will.

The rule laid down in *May* v. *Joynes, supra,* that limitations over after a devise for life with full power in the first taker to dispose of the subject, are void for repugnancy, and that the fee vests in the first taker, has been considered by this court many times, both before and subsequent to the enactment of Code, § 55-7. A full discussion of § 55-7, its antecedents and history, is found in *Southworth* v. *Sullivan,* 162 Va. 325, 173 S. E. 524, and in the more recent decisions of this court in *Moore* v. *Holbrook,* 175 Va. 471, 9 S. E. (2d) 447; *Rule* v. *First National Bank,* 182 Va. 227, 28 S. E. (2d) 709; *Hall* v. *Hoak,* 184 Va. 821, 36 S. E. (2d) 567; *Mowery* v. *Coffman,* 185 Va. 491, 39 S. E. (2d) 285; and *Crisman* v. *Swanson,* 193 Va. 247, 68 S. E. (2d) 502.

This brings us to a consideration of § 55-7* of Code,

---

*"If any interest in or claim to real estate or personal property be disposed of by deed or will for life, with a limitation in remainder over, and in the same instrument there be conferred expressly or by implication a power upon the life tenant in his lifetime or by will to dispose absolutely of such property, the limitation in remainder over shall not fail, or be defeated, except to the extent that the life tenant shall have lawfully exercised such power of disposal. A deed of trust or mortgage executed by the life tenant shall not be construed to be an absolute disposition of the estate thereby conveyed, unless there be a sale thereunder. (Code 1919, § 5147.)"

1950, the statute in effect at the time of Robert E. Borum's death.

The doctrine of *May* v. *Joynes, supra,* was first modified by chapter 146, Acts 1908, page 187, and further modified and clarified by the 1919 Code Revisors, § 5147, Code of 1919. *Southworth* v. *Sullivan, supra; Rule* v. *First National Bank, supra;* and *Crisman* v. *Swanson,* 193 Va. at page 250.

In the Revisors' Note to § 5147, Code of 1919, this is said:

"The second paragraph is a modification of the amendment of 1908 (Acts 1908, p. 187), the primary object of which was to abolish the doctrine of *May* v. *Joynes,* 20 Gratt. 692. This paragraph is expressly restricted to devises and bequests for life, with absolute power of disposition. The act of 1908 did not contain the words 'for life,' as to which see 1 Minor on Real Prop., section 858."

To the same effect, see *Hall* v. *Hoak, supra; Mowery* v. *Coffman, supra; Crisman* v. *Swanson, supra;* 1 Harrison on Wills and Administration (1927), § 243(7), p. 486; and 5 Va. Law Register, (N. S.) 97, 109.

In *Southworth* v. *Sullivan, supra,* 162 Va. at page 344, Mr. Justice Epes said this:

"There can be no question that the General Assembly intended by the act of 1908 to abrogate the rule of *May* v. *Joynes* and make valid the limitation over where property is explicitly granted, devised or bequeathed to a person for his life with power to dispose of the property, with a gift over to another of so much thereof as shall not be disposed of by the first taker."

In *Christian* v. *Wilson,* 153 Va. 614, 151 S. E. 300, Mr. Justice Holt, afterwards Chief Justice, referring to this section, said:

"This statute, the revisors in their notes say, is expressly limited to devises and bequests for life with absolute power of disposition. In such circumstances the doctrine of *May* v. *Joynes,* 20 Gratt. (61 Va.) 692, has been abolished and the estate of the remaindermen preserved. It would be unfruitful to restate that doctrine. If in the light of all that has

been said it is not clear, then certainly it never will be. In its application as a positive rule of law, the intention of the testator was undoubtedly at times over-borne. This was one of the considerations which led to the enactment of the statute; it is remedial and should be liberally construed." 153 Va. p. 627.

The fundamental rule in the construction of a will is, that the intention of the testator, if not inconsistent with some established rule of law, must control.

"The will is to be construed as a whole so as to ascertain the general plan and purpose of the testator, if there be one, and we are to ascertain the meaning of the words used in the will in the sense in which they were used by the testator, if that can be ascertained." *Conrad* v. *Conrad's Ex'or*, 123 Va. 711, 716, 97 S. E. 336; *Davis* v. *Kendall*, 130 Va. 175, 192, 107 S. E. 751; *Sheridan* v. *Krause*, 161 Va. 873, 884, 172 S. E. 508; *Trice* v. *Powell*, 168 Va. 397, 402, 191 S. E. 758; *White* v. *White*, 183 Va. 239, 31 S. E. (2d) 558; *Jobe* v. *Jobe*, 192 Va. 127, 131, 63 S. E. (2d) 726; *Arnold* v. *Groobey*, 195 Va. 214, 219, 77 S. E. (2d) 382, 385; 20 M. J. Wills, § 77, page 243, and cases cited.

See also *Missionary Society* v. *Hospital*, 163 Va. 114, 133, 176 S. E. 193; and *Triplett* v. *Trotter*, 169 Va. 440, 193 S. E. 514; 57 Am. Jur., Wills, § 1126, page 720; 69 C. J., Wills, § 1146, page 88, 20 M. J., Wills, § 75, page 240 *et seq.*

Here, we must first determine what the testator intended when he devised to his heirs all his property which remained "in her [his widow's] possession" at her death.

There was extrinsic parol evidence without objection, before the trial court that the testator had written a letter to his brother saying that he had made a will leaving all of his property to his widow; but upon her insistence that his property should go to his heirs at law, he had added a codicil, "stating that the property was to go to his widow for her lifetime and at her death, the remainder was to be divided among his heirs at law."

It was also shown, without objection, that Lizzie L. Borum

said that she had distributed the money received from the sale of the Thornrose Avenue property to her husband's kindred, as she did not care to reinvest it, because "according to Uncle Bob's will, at her death the property would go to his heirs anyway, and she felt like giving it to them now while she was living."

The word "possession" has many and various meanings. The books and cases are full of definitions, dependent upon various situations and subtle refinements. 33 Words and Phrases, Permanent Edition, page 80 *et seq.; National Safe Deposit Co.* v. *Stead,* 232 U. S. 58, 67, 58 L. ed. 504, 509, 34 S. Ct. 209, 212.

"By 'possession' is meant, that by which one can exercise his power over property at his pleasure to the exclusion of all others." *Gilkerson-Sloss Com. Co.* v. *London,* 53 Ark. 88, 13 S. W. 513, 514, 7 L. R. A. 403.

"Personal property is in the possession of a person whenever it is in his custody and control and subject to his disposition." *State* v. *Jones,* 213 N. C. 640, 197 S. E. 152, 153.

" 'Possession' simply means the owning or having a thing in one's power. * * * It implies a present right to deal with the property at pleasure and excludes other persons from meddling with it." *State* v. *Danser,* 105 W. Va. 495, 144 S. E. 295, 296.

In the instant case, the meaning of the phrase "in her possession" must be ascertained from the setting in which the word "possession" appears, its relation to the other words used, and the general plan and purpose of the testator as expressed in the codicil.

The verb "remain" in ordinary and common acceptance means "to be left over after a number or quantity has been subtracted or cut off." Webster's International Dictionary, 2d Ed., Unabridged.

When the testator referred to the property "that may remain in her possession at the time of her death," he was specifying that portion of his property which his wife had

not consumed, disposed of, sold or conveyed during her life, pursuant to the power conferred on her.

With these considerations and definitions in mind, the entire clause, "any of said property real or personal that may remain in her possession at the time of her death" manifestly means in simple language "any of said property, real or personal, that may remain undisposed of by her at the time of her death."

Mrs. Borum, the executrix of testator's estate and the grantee of an express estate for life in said property, was one and the same person, entitled to act in different capacities. She had absolute dominion and control over the estate. It was subject to her disposition and her right to deal with it at her pleasure. By no stretch of the imagination could the National Valley Bank of Staunton, with which the cash was deposited and the securities held, be said to have been the owner or possessor of said estate. It was, to a certain extent, only the custodian of the property which was owned and controlled by Mrs. Borum and subject to her disposal.

The testator in his will first gave his wife a fee simple and absolute estate in all of his property. She was his sole beneficiary and no reference was made to his relatives. The language used in his codicil plainly shows that he changed his mind. He revoked the provision of his will giving her an absolute and fee simple estate in all of his property, and gave to her only an estate "for and during her natural life." Had he wished her to have a fee simple and absolute estate, all he had to do was to leave his will as written on March 9, 1926. For reasons sufficient to him, he wanted to make provision for his kin; so he added the codicil, changing his original will and in the codicil first made what he considered adequate provision for his wife for her natural life, and thereafter provision for his kin.

In construing the language of the codicil, in the light of the provision of Code, § 55-7, the following requirements must be met in order to apply the statute:

(1) The first taker must be given an express estate "for life." This the codicil does.

(2) There must be "conferred expressly or by implication a power upon the life tenant in his life time or by will to dispose absolutely of said property." This requirement is met in full by language which reads: "with full power and authority to consume or dispose or sell and convey all or any of said property as she may see fit in her sole discretion."

(3) There must be "a limitation in remainder over." The codicil provides: "and any of said property real or personal that may remain in her possession at the time of her death, I will devise and bequeath to my heirs at law and distributees," etc. This is clearly a limitation in remainder over.

(4) There must be a corpus on which the "limitation in remainder over" can operate. The statute operated on all of the property passing to the life tenant except to the extent that the life tenant shall have lawfully exercised the power of disposal.

The words, "I hereby to the extent of this codicil modify and revoke my will as heretofore written in so far as may be necessary to do so, to carry this codicil into effect," are most significant. They point unerringly to the intention of the testator, not to vest in his widow the fee simple and absolute ownership in his estate, but to give her a life estate only, coupled with the absolute power of disposal. The limitation over failed only "to the extent that the life tenant lawfully exercised" her power of disposal. The property which remained at her death constituted a gift to his heirs, validated under § 55-7. To construe the will otherwise would destroy the testator's whole plan and purpose.

The instant case must be distinguished from cases like that of *Hall* v. *Hoak, supra,* where property was granted or devised generally, or in fee, to a person, thereafter given full power to dispose of it, with remainder over to another of such property as might remain undisposed of at the death of the first taker. Under such provisions the gift over

is not only void but against the law. As we said in those cases, when an estate is granted in fee simple, no remainder can be limited thereon, for there can be nothing left after a fee simple.

Under § 55-7 that which was void for repugnancy and uncertainty under the doctrine of *May* v. *Joynes, supra,* is made valid. Now, under § 55-7, the gift over is validated where the first taker is given *an express estate for life,* coupled with the power of absolute disposition in such property as remains undisposed of by the life tenant. *Mowery* v. *Coffman, supra,* 185 Va. at page 495. Here, the first taker, Mrs. Borum, took possession and control of her husband's property upon his death. She subsequently qualified as executrix, and as such took title to property already in her possession. The only property which was removed from her possession was that which she consumed, disposed of, sold or conveyed during her lifetime. The residue remained in her possession at the time of her death. Her mere failure to transfer title from herself as executrix to herself personally did not affect the possession of the property.

The next question is, what property passed to the remaindermen.

At the death of Mrs. Borum, there was, as we have stated, on deposit in the National Valley Bank of Staunton $3,590 in cash, to the credit of Lizzie L. Borum, executrix. The securities found in her safety deposit box in the bank, were marked "R. E. Borum Estate." This property was clearly earmarked as belonging to the estate of the testator, and its identity as a part of that estate has not been questioned. The evidence shows that the proceeds from the sale of the Thornrose Avenue property were distributed to the kin of the testator, in accordance with the life tenant's construction of his will.

Appellants admit they have not been able to establish that the $4,500 invested in the Spring Hill Road property, conveyed to Mrs. Borum, came from the estate of her husband. The burden was upon them to do so. As has been shown,

Mrs. Borum could have provided such funds from her own resources to make the purchase. The evidence fails to show that the estate of the testator, at the date of the death of the life tenant, consisted of any assets except the cash and securities delivered by the National Valley Bank of Staunton to R. L. Shaver, administrator d. b. n. c. t. a. of the estate of Robert E. Borum.

We conclude that, so far as the record shows, the property in the hands of the administrator d. b. n. c. t. a. constituted all of the property of the testator which remained in the possession of the life tenant at her death.

The trial court dismissed the bill, and therefore, did not undertake to ascertain the names of the heirs at law and distributees of the testator, who were entitled to share in the remainder in his estate, nor the amount to which each was entitled. The case, therefore, must be remanded for the determination of these questions.

Upon the whole, we conclude that, the testator having given his wife an express estate for life only, coupled with the absolute power of disposal during her lifetime, the gift over of such of his property as remained undisposed of by her at her death, to his heirs at law and distributees, constituted a valid gift under Code, § 55-7. Having reached this conclusion, the decree of the Circuit Court of Augusta County must be reversed, the bill of complainants reinstated, and the case remanded for further proceedings, not inconsistent with the principles and conclusions herein stated.

*Reversed and remanded.*