# CIRCUIT COURT OF ROCKINGHAM COUNTY

Joyce A. Allin

v.

Winford L. Morris,
individually and as
Executor of the Estate
of Melvie M. Dean,
deceased

April 3, 2007

Case No. CL06-00955

BY JUDGE JOHN J. MCGRATH, JR.

This matter is before the Court on Plaintiff's Motion for Summary Judgment pursuant to Rule 3:20 of the Rules of the Supreme Court. Although the Defendant has filed a counterclaim, no Motion for Summary Judgment has been filed on the Counterclaim.

Plaintiff is one of the two surviving children of Melvie M. Dean, who died testate on December 5, 2005. Her will was admitted to probate on January 12, 2006, and Defendant, who was the deceased's son-in-law, qualified as her Executor. By Clause Fourth of her will, the Testatrix purported to:

> devise and bequeath all of my estate, real and personal, including
> all lapsed or failed bequests or devises (herein referred to as my
> residuary estate) to my son-in-law, Winford L. Morris.

Plaintiff requests the Court to declare that a particular piece of land which Testatrix and her late husband acquired in 1952 and of which the Testatrix died

seised does not pass under her will because she, in effect, had only a life estate in the property with a remainder over to her "heirs."

The 1952 deed in question which was from J. Wesley McDaniel and Maud McDaniel, husband and wife, conveyed 51.834 acres to Emory C. Dean and Melvie M. Dean, husband and wife, using *inter alia*, the following words of conveyance:

> the said parties of the first part, have bargained and sold and do hereby grant and convey with General Warranty of Title unto the said Emory C. Dean and Melvie M. Dean, husband and wife . . . as joint tenants with a right of survivorship, *and to the survivor of them and to the heirs and assigns of such survivor forever as at common law. . . .*

(Emphasis added.) The 1952 conveyance from the McDaniels to the Deans included 51.834 acres. Between the date of acquisition and Melvie Dean's death, she and/or her husband had made nine out-conveyances. This suit involves the balance of the property, less the out-conveyances, of which she died seised.

The Plaintiff argues that, because of this language, Melvie Dean does not have a fee simple interest which she can convey by will and that, upon her death, her estate in the land terminated and, by the terms of the 1952 deed, the land goes in fee to her heirs.

Plaintiff argues that applying English common law and the "Rule in Shelly's Case" (a conveyance or devise of a life estate to A with remainder to A's heirs is a conveyance or devise of a fee simple absolute), Melvie Dean would have had fee simple absolute title. However, Plaintiff correctly points out that the Rule in Shelly's Case has been abolished in Virginia by Virginia Code § 55-14. (Plaintiff's Memorandum at pp. 3-4.)

Defendant, on the other hand, argues that it is well established in Virginia law that a grantor by deed is assumed to convey his or her entire estate in land unless clear language in the conveying document indicates that a lesser estate is being conveyed. Section 55-11, Code of Virginia (1950), as amended. See *e.g.*, *Goodson v. Capehart*, 232 Va. 232 (1986); *Waskey v. Lewis*, 224 Va. 206 (1982). Therefore, argues Defendant, when the McDaniels, who clearly owned title to the land in fee simple absolute, conveyed the land to the Deans in 1952, they conveyed their entire estate in the land. There is no suggestion in the pleadings or the attached deed that the conveyance was anything other than an arms-length transaction between non-related individuals.

There is no question that the language used in the 1952 deed was less than clear and is ambiguous on its face. A careful reading of the deed would seem to indicate that the grantors were attempting to grant their fee simple absolute estate to the Deans. That interpretation is supported by the rule of construction set forth in § 55-11, Code of Virginia, 1950, as amended.

It appears that, at common law, a conveyance to "B and his heirs" were the ritualistic words needed to convey a fee simple interest. Thus, one commentator has noted that:

> And from the thirteenth century on, the words "and his heirs" in a conveyance "to B and his heirs" merely indicated that B was given an estate in fee simple; B's heirs took no interest by virtue of the gift. . . .
>
> Since an estate in fee simple was an estate of general inheritance it was necessary at common law for the creation of such an estate that the conveyance use words of general inheritance. And with the verbal ritualism so characteristic of the period only the words "his heirs" were sufficient for this purpose. As stated by Littleton: "If a man would purchase lands or tenements in fee simple, it behooveth him to have these words in his purchase, To have to hold to him and to his heirs: for these words, his heirs, make the estate of inheritance." Substitute words were not effective. A conveyance by A "to B and his heirs" gave B a fee simple (assuming, of course, that A had a fee simple to convey); a conveyance "to B forever" or "to B and his assigns" or "to B in fee simple" gave B a life estate.

C. Moynihan, *Introduction to the Law of Real Property* (West Pub. 1962) at pp. 31-32.

A more recent commentary of the English common law of estates in land makes the same point. In their monumental work, *Elements of Land Law* (Oxford Univ. Press 2005), Gray and Gray explain that:

> The primacy of the fee simple estate is also reinforced by the provision in the Law of Property Act 1925 [the functional equivalent of § 55-11 of the Virginia Code] that all conveyances of freehold land now presumptively invest the grantee with a fee simple estate. . . . The grant of any limited estate in land must, accordingly, be cut back by express "words of limitation." A conveyance of freehold land without further reference to the estate

or interest intended to be granted (*e.g.* Greenacre "to X") is nowadays effective to invest the grantee with a fee simple estate in the land.[1] If the grantor wishes to dispose of some lesser estate in the land, he must actually employ words of limitation in his grant (*e.g.* Greenacre "to X for life").

At page 76 (footnote omitted).

Therefore, a strong case can be made that the 1952 deed conveyed a fee simple estate to the grantees and that the words "to their heirs and assigns of such survivor forever as at common law" are words of limitation defining the quantum of interest given to the grantee, and not words of purchase defining who takes the estate.

The Court, however, need not reach this far to resolve this case. Plaintiff unequivocally states in her Complaint, her Motion for Summary Judgment, and in her Memorandum in Support of Summary Judgment that the McDaniels conveyed a joint "life estate" to the Deans.[2] After alleging a life estate in the Deans, the Plaintiff then argues that this is not an express life estate, but is instead an implied life estate.

Accepting the Plaintiff's allegations for the purpose of argument, the implied life estate existing in Melvie Dean at her death was a life estate over which she had the full power to assign. The deed's language:

> do hereby grant and convey . . . unto the said Emory C. Dean and Melvie M. Dean . . . as joint tenants with a right of survivorship and *to the survivor of them and to the heirs and assigns of such survivor forever as at common law.* . . .

---

[1] Before 1882, a grant in free simple required the use of the formula "to X and his heirs" (but see now LPA 1925, § 60(4)). In this formula, the phrase "to X" comprised words of purchase indicating the identity of the grantee. The phrase "and his heirs" comprised the words of limitation which defined the nature of the estate granted, thereby removing any ambiguity between the grant intended and the grant of a life interest.

[2] Complaint at Paragraph 2 (1952 deed conveyed "a joint life estate"); Motion for Summary Judgment at p. 3 (1952 deed "conveyed a joint life estate to Emory C. Dean and Melvie M. Dean with remainder over to their heirs); Plaintiff's Memorandum in Support of Motion for Summary Judgment at p. 3 ("Emory and Melvie Dean took life estates in the property").

(emphasis added) can only be read to convey to the survivor, in this case, Melvie Dean, the power to assign the property to anyone. Hence, Melvie Dean could have conveyed all of the estate to an assignee(s) during her lifetime.

Plaintiff concedes, in essence, that the life estate she argues for is an "implied" life estate and not an "express" life estate. However, in this case, the implied life estate is accompanied with a complete and absolute right of alienation. The 1952 deed specifies that the grantees and the survivor of them has the power to convey to the "assigns of such survivor forever as at common law." Unlike the matter dealt with in *Shelly's Case*, this is not merely a life estate with a remainder over; instead this is a life estate with an absolute power during life of the life tenant to assign "forever as at common law," with a remainder over upon death.

Therefore, this case presents a classic example of a conveyance which is governed by the Doctrine of *May v. Joynes*, 61 Va. (29 Gratt.) 692 (1871). *May v. Joynes* and its progeny provide that, when a life estate is conveyed with a power of the life tenant to consume or assign the property, any remainder over following such a conveyance is repugnant to the free alienability of estates and the remainder is therefore void. As was stated by the Virginia Supreme Court in *Trustees of Duncan Memorial Methodist Church v. Ray*, 195 Va. 803 (1954):

> There is also the rule of common law that where property is granted or given to a person for life, and afterwards there is conferred upon him, either in express terms or by implication, the full power to dispose of the property, he is thereby vested with an absolute estate in the property, and the gift over of so much of the property as he shall not dispose of is void. *May v. Joynes*, 61 Va. 575, 20 Gratt. 692. These rules, both as to gifts in general terms and gifts for life are usually discussed under the doctrine of *May v. Joynes*, which doctrine this court has had occasion to consider in numerous decisions. *Crisman* and *Southworth* cases, *supra*. See also *Borum v. National Valley Bank of Staunton*, this day decided.
>
> It would be unfruitful to restate the history of this principle for it has been stated by Mr. Justice Buchanan in the recent case of *Crisman v. Swanson, supra*, in this concise language: "The doctrine of *May v. Joynes, supra*, was abolished by Chapter 146, Acts 1908, page 187 (*Southworth v. Sullivan*, 162 Va. 325, 173 S.E. 524), which act was in turn modified by

section 5147 of the 1919 Code, now section 55-7 of the 1950 Code, but the statute applies only to estates expressly granted for life. . . ."

In *Blanks v. Jiggetts, supra*, and *Voigt v. Selander*, 190 Va. 638, 58 S.E.2d, 25, relied on by the appellant, the gifts to the first takers were held express estates for life and therefore Code § 55-7 validated the gifts over. In the instant case, it is conceded that testator did not give his wife such an estate and therefore the statute has no application. See *Borum, Moore*, and *Southworth* cases, *supra*; *Hall v. Hoak*, 184 Va. 821, 36 S.E.2d 567; *Rule v. First Nat. Bank*, 182 Va. 227, 28 S.E.2d 709.

*Id.* at pp. 808-09.

Therefore, whether the life estate in this case is saved from the Rule of *May v. Joynes* by § 55-7 of the Code of Virginia depends on whether the life estate is "expressed" or "implied." Clearly, assuming *arguendo* that a life estate was created by the 1952 deed, it was certainly not an expressed life estate. The cases construing express and implied life estate are far from clear in drawing a demarcation line between the two. However, two cases decided by the Supreme Court on March 15, 1954, give some insight into the Court's reasoning. In *Trustees of Duncan Memorial Methodist Church v. Ray, supra*, the conveying document, a will, provided:

I . . . request that my wife . . . take immediate possession of my home with its contents . . . and everything that stands in my name. At my wife's death, the remainder of what may be left is to be divided equally between . . . [x] and . . . [y].

195 Va. at p. 804. The Court further found that:

The wife in this case was vested with absolute power of disposal of all the testator's property. She, therefore, took a fee simple in the real property and an absolute estate in the personal property.

*Id.*, at p. 809.

In *Borum v. National Valley Bank of Staunton*, 195 Va. 899 (1954), decided by the Supreme Court on the same day as *Trustees of Duncan Memorial Methodist Church v. Ray*, the will in question provided:

> I will, bequeath, and devise all of my property, personal, real, and mixed, to my wife for and during her natural life with full power and authority to consume or dispose or sell and convey all or any of said property as she may see fit in her sole discretion, and any of said property that may remain in her possession at the time of her death, I will, devise, and bequeath to my heirs at law. . . ."

*Id.*, at pp. 900-01.

In *Borum*, the Supreme Court found that the bequest to the wife to be "an express estate for life" and was, therefore, exempted from the Rule of *May v. Joynes* by § 55-7 of the Code of Virginia. See also, *Pigg v. Haley*, 224 Va. 113 (1982).

In *Signet Trust Bank v. Fauber*, 66 Va. Cir. 406 (Nelson County 1966) (Gamble, J.), the Court was required to construe a will in which the testator provided:

> I give, devise, and bequeath all of my property . . . to my wife . . . with full power to dispose of the same; but if all or any part of said property remains undisposed at the death of my wife or her remarriage, whichever event first occurs, then I give, devise, and bequeath all or the part undisposed of to my then surviving sisters. . . ."

*Id.* at p. 406. Judge Gamble found that this bequest was not an expressed life estate and, therefore, was not saved from *May v. Joynes* by the operation of § 55-7 of the Code of Virginia. The court noted that at no point in the conveyance did the testator use the term "life estate" or "estate for life."

This Court is fully aware of the fact that, under the law, there is no need for any precise words to be used to create a life estate. See, *e.g.*, *Robinson v. Caldwell*, 200 Va. 353 (1958); *Horne v. Horne*, 181 Va. 685 (1943); *Walker v. Clements*, 216 Va. 562 (1976). However, the language used in the deed in this case allegedly creating a life estate appears to be anything but clear and unambiguous. The scrivener never used the terms "for life," "life estate," or "estate for life." In fact, Plaintiff clearly concedes that the life estate she argues is created by the 1952 conveyance *is not* an express life estate, and she further concedes that § 55-7 does not apply to this case.

Plaintiff, therefore, has readily conceded that § 55-17, which repealed the Rule in *May v. Joynes*, is not applicable in this case. In her Memorandum in Support of Motion for Summary Judgment, Plaintiff clearly states:

Finally, Virginia Code § 55-7 does not apply to this case for several reasons. First, there must be an express life estate given, *Pigg v. Haley*, 224 Va. 113, 120-21, 294 S.E.2d 851, 856 (1982), and second, there must be a power of disposition conferred upon the life tenant, either expressly or by implication, by the deed, *Id.*, *Powell v. Holland*, 224 Va. 609, 616-17, 299 S.E.2d 509, 513 (1983). The life estate in the McDaniel deed is not express and even if it were construed to be express, the[re] is no power of disposition of any type given to either of the grantees in the deed.

The Court, therefore, holds that, if it is assumed *arguendo* that the 1952 conveyance created a life estate by implication in Melvie Dean, with an absolute right of assignment in her lifetime with a remainder over, the devise is not saved from the operation of *May v. Joynes, supra*, and by § 55-7 of the Code of Virginia. Therefore, Melvie Dean at the time of her death was possessed of a fee simple absolute title in the remaining balance of the 51.834 acres which was conveyed to her and her husband by deed dated August 23, 1952. Wherefore, the Plaintiff's Motion for Summary Judgment is hereby denied.

The Clerk is directed to send attested copies of this Opinion and Order to Steven M. Blatt, Esquire, and to Cathy J. Leitner, Esquire.