# Richmond

FANNIE E. WALKER v. H. ELIZABETH CLEMENTS, ET AL.

January 16, 1976.

Record No. 741180.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Poff and Compton, JJ.

*Harry A. Morris, Jr.* (*James B. Martin; Martin, Hicks & Ingles, Ltd.*, on brief), for appellant.

*Harry J. Kostel* (*Jones, Blechman, Woltz & Kelly*, on brief), for appellee H. Elizabeth Clements.

HARRISON, J., delivered the opinion of the court.

This appeal involves the construction of the will of Henrietta M. Lawson, who died on June 11, 1958. The material portion of the instrument, dated May 28, 1955, and duly probated, provides:

"I want all my property, real estate, money and bonds to go to my brother, Albert T. Hall, to use as he sees fit. At his death I want what ever is left to be divided equally between my sister, Fannie Walker, and my nephew, Malvin Bernard Horsley. In the event that either is already deceased then I want it all to go to the one left."

In March, 1972, appellant, Fannie E. Walker, sought to have partitioned a 207-acre farm located in Gloucester County, Virginia, in which she had an interest by virtue of this will. To effect such partition, it was necessary that the exact proportion of ownership of each party in interest be determined. The commissioner in chancery made this determination, finding that Fannie E. Walker was seized of an undivided 12/30 interest in the land. H. Elizabeth Clements, one of the appellees, excepted to the report, claiming, among other things, that Fannie E. Walker was seized only of an undivided 1/30 interest in the land. The court below sustained the exceptions of Clements and decreed that appellant was seized of an undivided 1/30 interest only. Appellant claims that her interest in the land was correctly reported by the commissioner.

Only one question is involved here, and that is whether Albert T. Hall was given a life estate in the property bequeathed and devised him by Henrietta M. Lawson, as the appellant contends, or whether, as appellees argue, Albert T. Hall took a fee simple and absolute estate in the property of the testatrix. We are not concerned here with *May v. Joynes*, 61 Va. (20 Gratt.) 692 (1871), or with Code § 55-7 because the will of Henrietta M. Lawson did not give Albert T. Hall an express estate for life, coupled with the power of absolute disposition during his lifetime. Hall either took a life estate or he received a fee simple interest.

The key to the construction of this will is found in the phrase "to use as he sees fit", and in the word "use". The will of Henrietta M. Lawson was not prepared by an attorney. In fact she stipulates therein: "I do not want a lawyer called in to handle this but I want everyone to know that the wishes expressed above are my very own and are to be carried out as stated here." The will is not couched in legal or technical terms. *Black's Law Dictionary* 1710 (4th ed. 1951), referring to the nontechnical sense of the word "use", says: "The 'use' of a thing means that one is to enjoy, hold, occupy, or have some manner of benefit thereof."

In *Roller* v. *Shaver*, 178 Va. 467, 474, 17 S. E. 2d 419, 423 (1941), we said:

> "We have said in a number of cases that the word 'use' does not import any power of disposition of the *corpus*—the *jus disponendi* of the thing used—but its meaning denotes the contrary. This interpretation is expressed in these words: 'Indeed only the right to use and enjoy the benefit of the *corpus* is implied by the word "use". *In re Moor's Estate*, 163 Mich. 353, 128 N. W. [198], 199.' *Hurt* v. *Hurt*, 121 Va. 413, 422, 93 S. E. 672, 674; *Taylor* v. *Taylor*, 176 Va. 413, 11 S. E. (2d) 587; *Bristow* v. *Bristow*, 138 Va. 67, 69, 120 S. E. 859."

In *Bristow* v. *Bristow*, 138 Va. 67, 68, 120 S. E. 859 (1924), the wife was given property "to use as she pleases during her life and while she remains my widow". There we held that this did not create a fee simple estate because the duration of the wife's control over the property was specifically limited by the instrument.

*Trustees of Duncan Church* v. *Ray*, 195 Va. 803, 804, 807, 80 S. E. 2d 601, 602, 603 (1954), is distinguishable. There we construed a will wherein the testator requested that his wife "take immediate possession" of all his property, "and every thing that stands in my name". The wife was "to see every thing I may owe, be paid" and "have full control her life time". From an examination of the will and its attending circumstances, we concluded that the testator's wife was his first and foremost concern and that it was his intention to see that she was fully and amply cared for during her life and "to that end he gave her full control her life time . . . so that she could use it for her needs or as she saw fit and without any limitation whatsoever".

Appellees also point to *Gardner* v. *Worrell*, 201 Va. 355, 111 S. E. 2d 285 (1959) and *Mowery* v. *Coffman*, 185 Va. 491, 39 S. E. 2d 285 (1946), where in each case the first takers were determined to have acquired fee simple interest. In *Gardner* we held that the intent of the testator was plain and certain. There we found that the clause in controversy gave all the testator's property to his wife; that it specifically provided that she could do as she pleased with it; that she could sell anything she wanted to sell; and that she could make or transfer title to anything that she did sell. We held that this gave the wife unlimited and unrestricted power of absolute disposition, and

that the limitation over "if there is anything left" was invalid, "being inconsistent with and repugnant to the fee" for "[t]here can be no remnant after a fee simple is created". 201 Va. at 356, 111 S. E. 2d at 286.

In *Mowery* the clause in controversy devised a wife "all my real and personal estate of any and every kind of which I shall die seized and possessed except as above disposed of with full authority to dispose of any part thereof that she may deem necessary for her support and maintenance". 185 Va. at 492, 39 S. E. 2d at 286.

We do not find in the Lawson will, and in the devise to Albert T. Hall, such language as "right of disposition", "possession", or "full control". Instead we have a devise to a brother "to use as he sees fit". By this language Albert T. Hall acquired no greater interest than he would have had had the testatrix given her property to him to "use", or to "use as he desired", or to "use as he wished". The fact remains that the property was given to be used, enjoyed, held and occupied by Albert T. Hall and for Hall to be benefitted by such use. The will did not give Hall the right to sell, give, mortgage, or dispose of as he saw fit. It gave only the right to *use* as he saw fit.

The second sentence of the devise to Hall is "[a]t his death I want what ever is left to be divided equally between my sister, Fannie Walker, and my nephew, Malvin Bernard Horsley". We do not interpret the phrase "what ever is left" as indicating that Albert T. Hall had theretofore been given the complete right of disposition. Hall was given the use of all the property owned by the testatrix, real and personal, tangible and intangible. "What ever is left" of personal property would be that which was not worn out, lost, stolen or misplaced, or livestock that had not died during the lifetime of Albert T. Hall. Whatever is left of intangible property would depend upon the solvency of banks in which money was deposited, and the soundness of the corporations issuing the stocks and bonds owned by the decedent. Whatever is left of real estate would depend upon the use to which the real estate was put by the life tenant, whether any of the timber had been destroyed by fire or used by the life tenant, or whether any of the real estate had been taken by eminent domain. The language in the Lawson will, "what ever is left", recognized the fact that the estate which the testatrix had given her brother, Albert T. Hall, could be depleted and lessened through "use" during his lifetime.

Giving to the word "use" its common and accepted meaning, it is our conclusion that the will of Henrietta M. Lawson created a life estate only in Albert T. Hall. We cannot construe the phrase "to use as he sees fit" to mean "to dispose of as he sees fit". The will contemplated that upon the termination of the life estate created thereby whatever remained "that had not been used", or "what ever was left", would be divided between Fannie Walker and Malvin Bernard Horsley, or the survivor. Albert T. Hall was given the full use and enjoyment of the Lawson property during his lifetime. We hold that this was the intention of the testatrix, and that this intention was expressed by her in the words she chose. In construing the will, we depend upon the language of the testatrix to convey her intent, and such intention, once ascertained, is the governing principle and must prevail unless it violates some rule of law. We know of no rule of law which prevents the intention expressed by the testatrix from being given effect in this case.

Accordingly, the decree of the lower court is reversed, and the cause is remanded for the entry of a decree consistent with the views expressed herein.

*Reversed and remanded.*

POFF, J., dissenting.

I cannot agree with the conclusion my brothers reach.

I do agree that neither the rule in *May v. Joynes*, 61 Va. (20 Gratt.) 692 (1871), nor the provisions of Code § 55-7 (Repl. Vol. 1974) control this case; both are operative only when the will creates an *express life estate* in the first taker, coupled with the power of absolute disposition.

Another rule controls here.

"Where there is a devise or bequest to one in *general terms* and there is a subsequent limitation over of what remains at the first taker's death, if there is also given to the first taker an unlimited and unrestricted power of absolute disposal, express or implied, the devise or bequest to the first taker is construed to pass a fee, and the limitation over is invalid. *E.g., Crisman v. Swanson*, 193 Va. 247, 68 S.E.(2d) 502; *Carr v. Effinger*, 78 Va. 197." *Trustees of Duncan Church v. Ray*, 195 Va. 803, 808, 80 S.E.2d 601, 604 (1954).

Though similar to the rule in *May v. Joynes, supra*, this rule is distinctly different in that it is operative when the will creates an estate

in the first taker by a devise in *general terms*. For that reason, this rule is not affected by the provisions of the statute.

Whether the *Duncan Church* rule is applicable in a particular case depends upon whether the first taker is given the "power of absolute disposal, express or implied".

> "Illustrative of the language held to imply the power of absolute disposal and thus a fee simple in the first taker are the following: 'at their death the balance, if any, to their children,' *Hall* v. *Palmer*, 87 Va. 354, 12 S.E. 618; 'what may remain of the same,' *Farish* v. *Wayman*, 91 Va. 430, 21 S.E. 810; 'if there is any left after their death,' *Brown* v. *Strother*, 102 Va. 145, 47 S.E. 236; 'if at my wife's death there remains anything,' *Steffey* v. *King*, 126 Va. 120, 101 S.E. 62; 'such remaining part of this bequest as she shall die possessed of, if any,' *Skinner* v. *Skinner*, 158 Va. 326, 163 S.E. 90." *Trustees of Duncan Church* v. *Ray, supra*.

The testamentary language in *Duncan Church* which we held sufficient to imply an intent to grant a power of absolute disposal was "the remainder of what may be left". Here, the language is "what ever is left". I see no difference.

In my view, *Roller* v. *Shaver*, 178 Va. 467, 17 S.E.2d 419 (1941), is not dispositive. There, we found that the language in the limitation over was not sufficient to raise an implication of an intent to grant an absolute power of disposition, and we construed the verb "use" to connote an intent to create a life estate. But in *Roller*, the first taker's right to "use" was expressly limited; here, Albert T. Hall was given the power "to use as he sees fit."

In the case at bar, as in *Duncan Church*, the will devised an estate in general terms with a limitation over of whatever is left; such language implies an intent to grant the power of absolute disposal; and the general devise "is construed to pass a fee and the limitation over is invalid."

The majority have effectively nullified the rule in *Duncan Church*. Perhaps, for the same policy reasons which prompted the enactment of Code § 55-7, that rule should be nullified or modified. I would defer to the General Assembly to make that policy judgment.