Present:  All the Justices

WILLIAM V. GAYMON, EXECUTOR OF THE
ESTATE OF WILLIAM E. GAYMON

v.  Record No. 982483    OPINION BY JUSTICE ELIZABETH B. LACY
                                        September 17, 1999
VIOLETA N. GAYMON, ET AL.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Arthur B. Vieregg, Jr., Judge

William V. Gaymon, Executor of the estate of his father, William E. Gaymon, appeals from a judgment of the trial court construing language in the decedent's will.  For the following reasons, we conclude that in construing the will, the trial court correctly held that the testator created a life estate in favor of the testator's widow in certain real property, but erred in its conclusion that the language in the will showed an intent by the testator to make the remainder persons personally liable for the interest as well as the principal due under the two deeds of trust on the property.

The testator was survived by Violeta N. Gaymon, his widow, and two adult children from his former marriage, William Victor Gaymon and Nicole G. Gaymon (the Gaymon children).  The Fifth Article (Article 5) of testator's will provides:

> FIFTH.  I give and bequeath to my children,
> WILLIAM V. GAYMON and NICOLE G. GAYMON, share and
> share alike, the following described property,
> subject to any encumbrances upon the same upon
> the date of transfer *and the mortgage remaining
> shall be paid by the remainder persons*:

> a.  My residence, together with improvements
> thereon, located at 2619 Fox Mill Road, Reston,
> Virginia.
>
> . . .
>
> It is understood that in the case that Mrs.
> VIOLETA N. GAYMON and I have residence at the Fox
> Mill address at the time of my demise, she would
> have a life estate in the same for the remainder
> of her life.

The language in Article 5 that is italicized above was a handwritten addition initialed by the testator.

After the testator's death, William V. Gaymon made the payments due under the two deeds of trust on the Fox Mill residence (the property) for about eight months, although it is disputed whether he made those payments in his capacity as an executor.  After William V. Gaymon decided not to make any additional payments, Violeta began making the payments to avoid a foreclosure action.

Acting as the Executor, William V. Gaymon filed a bill of complaint in the trial court, seeking aid and direction in the administration of the testator's estate.  In his amended bill of complaint, the Executor asked the chancellor to determine, among other things, whether Article 5 created a "mandatory or precatory life estate" in favor of Violeta in the property. The Executor also asked the chancellor to declare that, under the terms of the will, Violeta is obligated to pay expenses on the property, including interest on the deed of trust notes,

2

taxes, and insurance. The Executor further requested that the chancellor order Violeta to reimburse the estate "for any payments made by the Estate on account of the Residence except for principal payments on the deed of trust notes." Violeta filed an answer and cross-bill asking the chancellor to determine that, under the terms of the will, the remainder persons are liable for the entire mortgage payments and asking that she be reimbursed for all payments she made on the notes secured by the deeds of trust.

The chancellor heard evidence of the circumstances surrounding the testator's execution of the will but later ruled that the testator's intent could be ascertained from the four corners of the will, and that extrinsic evidence was thus inadmissible except for the limited purpose of determining the meaning of the term "mortgage," as used in the handwritten addition to Article 5.

After considering the language within the four corners of the will, the chancellor concluded that the testator intended to "will a life estate to his wife and that by bequeathing the property to his children, he was bequeathing it subject to that life estate . . . ." In the final decree, the chancellor held that Violeta was entitled to a life estate in the property.

The chancellor next concluded that, by adding the handwritten language, "[a]nd the mortgage remaining shall be paid by the remainder persons," the testator avoided the common law rule requiring a life tenant to pay the interest due on a mortgage during the term of the life tenancy. Thus, the chancellor ruled that the interlined language unambiguously expressed the testator's intention that the remainder persons pay all the mortgage expenses for the property. In the final decree, the chancellor held that the Gaymon children are required to pay "all sums due under the two Deeds of Trust on the Residence, including principal and interest, from the date of transfer, to wit: Testator's death on June 3, 1997, until paid in full." The chancellor further held that the Gaymon children's interest in the property "will be subject to a lien for all amounts paid by VIOLETA N. GAYMON on said Deeds of Trust since June 3, 1997 and thereafter."

The Executor appealed, asserting that the chancellor erred in holding that the will created a life estate in the property in favor of Violeta, and that the chancellor erred in holding that the Gaymon children were personally liable for the interest accruing on the notes secured by the deeds of trust on the property. The Executor did not assert at trial or on appeal that Violeta was liable for the principal of the notes secured by the deed of trust.

4

The legal principles applicable to the construction of a will are well established.  The objective in construing a will is to determine the testator's intent by initially looking to the four corners of the document.  Extrinsic evidence may be considered only if the language of the will is ambiguous, that is, susceptible to more than one interpretation.  Gillespie v. Davis, 242 Va. 300, 303-04, 410 S.E.2d 613, 615 (1991).

## I.  Life Estate

The threshold issue is whether the chancellor erred in determining that Article 5 of the will gave Violeta a life estate in the property.  The Executor argues that the phrase "It is understood" contained in Article 5 reflects the testator's request or desire that Violeta be allowed to remain on the property but does not give her the right to do so.  In support of this position, the Executor relies on Carson v. Simmons, 198 Va. 854, 856, 96 S.E.2d 800, 802 (1957), in which the phrase "with the understanding" was determined to be precatory rather than mandatory, thereby defeating a claim that a spendthrift trust was created.  However, although the phrases in Carson and in this case are similar, the context in which they appear is quite different.  Thus, applying the principles discussed in Carson to this case does not lead to the same result.

The will in Carson gave the testator's daughters an apartment building "with the understanding that" the daughters would rent out one of the apartments and use the rental income for the upkeep of the property until the youngest grandchild reached 16 years of age. The Court concluded that this phrase was precatory because it directed the legatees to perform some act, rather than directing actions of the executor. The Court reached this conclusion even though the use of the same phrase in a subsequent paragraph of the will was mandatory. Id. at 858-59, 96 S.E.2d at 804.

In this case, however, reading the phrase "it is understood," within the context of Article 5 leads to only one interpretation, that the testator intended to create a life estate. As noted by the chancellor, Article 5 refers to the Gaymon children as "remainder persons." That reference is consistent only with the conclusion that a life estate was created in the property because, without such an estate, the Gaymon children would have a fee simple interest, not a remainder interest. And, unlike the direction in Carson, Article 5 gives no direction to the Gaymon children, but only declares the interest created. The only contingency attached to the interest given Violeta was that she and the testator be living at the property at the time of the testator's death. There is nothing in the will which supports a conclusion that

6

the Gaymon children, the remainder persons, had the discretion to determine whether Violeta Gaymon could remain on the property during her lifetime.

The Executor also relies on the rule of construction recited in Smith v. Baptist Orphanage, 194 Va. 901, 75 S.E.2d 491 (1953), and McKinsey v. Cullingsworth, 175 Va. 411, 9 S.E.2d 315 (1940), that when an estate is conveyed in one part of an instrument by clear and unambiguous words, only words of equal clarity and decisiveness can diminish or destroy that estate. According to the Executor, the phrase "it is understood" is too imprecise to effectively diminish the fee simple estate granted the Gaymon children in the property by Article 5 of the will. We disagree.

No specific words are required to create a life estate. Robinson v. Caldwell, 200 Va. 353, 356-57, 105 S.E.2d 852, 854 (1958). Nevertheless, the language of Article 5 – "a life estate in the [property] for the remainder of her life" – is not a vague or general description of the interest conveyed. Rather, this is the formal, technical language associated with the creation of a life estate. Furthermore, in both the cases upon which the Executor relies, the Court was required to consider whether certain phrases allegedly describing the interests at issue were mandatory or precatory and, in both cases, we concluded that the phrases only indicated a desire

of the testator and thus were not mandatory.  Obviously, if a phrase in a will is precatory and creates no interest, it cannot be of equal dignity with words creating an interest.  In this case, as we have already said, the language of Article 5 is not precatory.  Therefore, the rule of construction cited by the Executor does not defeat the intent of the testator as expressed in Article 5 under the circumstances of this case.

For these reasons, we conclude that there is no error in the chancellor's conclusion that the language of Article 5 unambiguously creates a life estate in the property in favor of Violeta Gaymon.

## II.  Liability of Remainder Persons

In addition to determining the testator's intent regarding Violeta's interest in the Fox Mill property, the chancellor was asked to determine the testator's intent in adding the phrase "and the mortgage remaining shall be paid by the remainder persons" to Article 5.  In resolving this issue, the chancellor again concluded that the testator's intent could be determined from the four corners of the document, with the exception of the meaning of the word "mortgage." After taking evidence on that issue, the chancellor concluded that the term "mortgage" included the two deeds of trust on the Fox Mill property securing personal debts of the testator. The chancellor then apparently determined that the testator

8

would not have added the interlined language unless it had a meaning independent of the instructions already contained in the will. That independent meaning, the chancellor concluded, was that the added language negated the common law obligation of a life tenant to preserve the estate for the remainder persons, including the obligation to pay interest due on encumbrances on the property, and that the added language placed the obligation to pay interest on the remainder persons.

Although we agree with the chancellor that extrinsic evidence was not necessary to determine the testator's intent in adding the language directing the remainder persons to pay the mortgages, we disagree with the chancellor's ultimate interpretation of the added language. Apparently, the chancellor concluded that the testator used the word "mortgage" to mean both the principal and interest due on the deeds of trust. By using that word, the chancellor concluded, the testator intended the remainder persons to pay both principal and interest, thus altering the common law principle that a life tenant must pay the interest on any encumbrance on the devised life estate property. Livesay v. Boyd, 164 Va. 528, 532-33, 180 S.E. 158, 159-60 (1935).

However, there is nothing in the word "mortgage" itself that indicates inclusion or exclusion of interest due on the

9

encumbrance, and there is no other language in the added phrase or elsewhere in the will that addresses the treatment of interest. Therefore, in the absence of more precise direction, we cannot conclude that by using the word "mortgage," the testator intended to deviate from the well-established common law principle regarding the obligation of a life tenant.

Having determined that the interlined language does not support the chancellor's interpretation of the testator's intent, we conclude nevertheless that the added language had a meaning independent of other instructions in the will. That language shows the testator's intent to make the remainder persons personally liable for payment of the mortgage principal.

The general rule in this Commonwealth is that if property encumbered with a lien is devised in a will, and the lien secures a personal debt of the testator, the decedent's personal estate, not the encumbered property, is the primary fund for discharge of that debt. Brown, Adm'r v. Hargraves, 198 Va. 748, 750, 96 S.E.2d 788, 790 (1957); French v. Vradenburg's Ex'rs, et. al, 105 Va. 16, 18, 52 S.E. 695, 695 (1906); Elliot v. Carter, 50 Va. (9 Gratt.) 541, 549 (1853). Operation of this rule can be altered by the testator if he directs in his will that the encumbered property be the

10

primary source of his estate for satisfaction of the lien.
Id.

To determine the priority of the property in the testator's estate for satisfaction of such liens, the language of the will is reviewed to ascertain the intent of the testator, as in all cases of will construction.  In this case, by devising the property "subject to any encumbrances," the testator indicated his intent that the encumbered property, not his personal estate, be the primary source of his estate for payment of the deeds of trust.[*]

However, while devising the property subject to the deeds of trust changed the order in which the component parts of the decedent's estate were to be looked to for satisfaction of his debts, it did not go so far as to make the remainder persons personally liable for the debts secured by the deeds of trust. Personal liability was imposed when the testator added the language directing that the mortgages "shall be paid by the remainder persons."  This added language imposed a condition on the disposition of the testator's estate, that the remainder persons would assume personal liability for the debt secured by the deeds of trust.  This condition has meaning and effect independent of the direction devising the property

---

[*] Of course, if the property were sold to satisfy the liens but proceeds were insufficient, the unpaid balance could be satisfied out of the personal estate.

11

"subject to any encumbrances" and unrelated to the common law apportionment of the obligations of life tenants and remainder persons to make mortgage payments.

Thus, we conclude that the testator's intent in adding the interlined phrase was to make the remainder persons personally liable for the debts secured by the deeds of trust, but not to negate the common law principle that the life tenant has the obligation to preserve the property, including among other things the duty to pay the interest on any liens on the property.

### III.  Disposition

We now turn to the appropriate relief in light of the foregoing conclusions.  First, we will affirm the chancellor's conclusion that Article 5 of the will created a life estate in Violeta Gaymon in the property.

Turning to the liability of the remainder persons, we note that the Executor argues, citing Hill v. Huston's Ex'r, 57 Va. (15 Gratt.) 350 (1859), that the remainder persons cannot be charged with personal liability for the deeds of trust unless they accept the devise.  However, our role in this case is to interpret the will, not to determine whether the remainder persons have accepted or disclaimed the devise. Additionally, the remainder persons are not parties to this action.  Furthermore, the Executor limits his request for

relief to reversing "that portion of the trial court's order putting a charge on the real estate and holding the remaindermen personally liable for interest on the mortgage and any other expenses."  Under these circumstances, we need not decide if the devise has been accepted by the remainder persons.

Therefore, we will reverse that portion of the chancellor's order holding that Article 5 of the will imposed liability on the remainder persons for the interest due on the deeds of trust on the property and that "the remainder interest" on the property "will be subject to a lien for all amounts" paid by the life tenant, Violeta Gaymon, on the notes secured by the deeds of trust.

Finally, we will remand the case to the chancellor for allocation of liability for past payments in accordance with the principles set out in this opinion.

<u>Affirmed in part,
reversed in part,
and remanded.</u>

13