PRESENT:  All the Justices

JAMES E. FEENEY, IV

v.  Record No. 170031

MARJORIE R. P. FEENEY, INDIVIDUALLY
AND AS EXECUTOR AND TRUSTEE OF THE
ESTATE OF JAMES E. FEENEY, JR., ET AL.

OPINION BY
JUSTICE WILLIAM C. MIMS
April 12, 2018

SEAN PATRICK FEENEY

v. Record No. 170032

MARJORIE R. P. FEENEY, INDIVIDUALLY
AND AS EXECUTOR AND TRUSTEE OF THE
ESTATE OF JAMES E. FEENEY, JR., ET AL.

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Jeanette A. Irby, Judge

In these appeals, we construe a will's residuary clause to determine what estate it grants to the testator's wife.  Additionally, we consider whether the appellants are entitled to their attorneys' fees under the doctrine of judicial instructions.

I.  Background and Procedural History

James E. Feeney, III ("testator") died in May 2012.  He was married to Marjorie Feeney ("Marjorie") and had two sons from a prior marriage: Sean P. Feeney ("Sean") and James E. Feeney, IV ("James").  Testator's will grants Marjorie all tangible personal property and awards certain cash gifts to James and Sean to be held in trust.  The will also names Marjorie as executor and trustee.

The primary provision of the will at issue in this appeal is the residuary clause, which states:

> I give the residue of my estate, including all property as to which I may be a power of appointment, as follows: I devise and bequeath all of such rest and residue of my Estate to MARJORIE, should she survive me. It is my intention that she use the assets of my estate to provide for her health and support, and to continue providing for the health, support and education of my son SEAN while he is a minor, and in matters past the age of eighteen (18) at her discretion; and that upon her death any remaining assets of this estate pass to him, IN TRUST, per stirpes. At no time and under no circumstances should any of my estate's assets or personal property pass to or be used on behalf of DEBORA Y. FEENEY, BRIAN D. PATTERSON, CASEY T. PATTERSON, or JAMES P. PATTERSON unless expressly designated herein.
>
> Marjorie and I have agreed to keep our personal assets separate. We may use each other's estate assets for our personal support and well-being as is normal and expected for a husband and wife to care for one another after their spouse has deceased. But the accounts are to be kept separate so that, at the time of our respective deaths, any assets remaining from my estate will be used for the care and welfare of my children and their descendants, and any assets of her remaining estate will be used for the care and welfare of her children and grandchildren.

After the will was probated, James filed a complaint asking the circuit court to construe the residuary clause as granting Marjorie a life estate in the residual property ("Count I"). In James's view, any property remaining in the residual estate at Marjorie's death would pass to Sean, in trust, and once Sean reaches the age of 35 the remaining trust assets would be divided between Sean and James in accordance with Article III of the will. Additionally, in Counts II through IV, the complaint asked the circuit court to remove Marjorie as executor and trustee, order that Marjorie reimburse the estate for any assets wrongfully converted for her own use, and award James's attorney's fees.

The complaint named Marjorie and Sean as co-defendants. As Sean was a minor at the outset of this litigation, the circuit court appointed a guardian ad litem ("GAL") to represent his interests. In his answer, Sean adopted most of the positions taken by James, specifically

2

requesting that the court determine the parties' interests in the residuary estate, remove Marjorie as executor and trustee, and order that the attorneys' fees incurred by James and Sean be paid out of Marjorie's interest in the estate.

The parties agreed that the language of the residuary clause was unambiguous and its meaning could be decided on summary judgment without the aid of extrinsic evidence. Accordingly, the circuit court entered an agreed order scheduling a hearing for "argument by the parties o[n] their respective motions for summary judgment . . . in relation to Count I of the Complaint." After this hearing, the court granted Marjorie's motion for summary judgment and denied the sons' motions. It concluded that "the language of the will is clear and that [the] intent of the testator was to devise and bequeath all of the rest and residue of the estate to [Marjorie]." The court "specifically [found] that a life estate was not created."

In so holding, the court stated that "the authorities and argument relied upon by [Marjorie were] persuasive," specifically citing *May v. Joynes*, 61 Va. (20 Gratt.) 692 (1871) and *Rawlings v. Brisco*, 214 Va. 44, 197 S.E.2d 211 (1973). In motions for reconsideration, the sons argued that the court's reliance on *May v. Joynes* was misplaced because, as abolished and replaced by Code § 55-7, it only applies where a testator grants an express estate for life coupled with the power of absolute disposition during such lifetime. The court denied these motions.

The parties disagreed as to the scope of the circuit court's grant of summary judgment. James and Sean maintained that, in accordance with the agreed April 2015 order, the case was bifurcated and the court only granted summary judgment as to Count I. They conceded that the court's ruling had mooted Count IV, but insisted that Counts II and III were still viable. Marjorie argued that the court inferentially dismissed the entire complaint because neither James nor Sean responded to an assertion in her motion for summary judgment that a verdict in her favor on

3

Count I would render the remaining counts moot. After a hearing and argument by counsel, the court entered an order granting summary judgment on all four counts.

Despite these adverse rulings, James and Sean moved for the circuit court to tax their attorneys' and GAL fees against the estate on the ground that the meaning of the residuary clause required judicial instructions. The circuit court declined to do so, noting that the doctrine of judicial instructions justifying recovery of legal fees had not been officially adopted by this Court. In any event, the court held that the doctrine would be inapplicable because James and Sean litigated the case for their own interests, interfering with Marjorie's duties as executor and trustee. We granted James and Sean these appeals.

## II. Analysis

### A. Residuary Estate

On appeal, the primary question before this Court is whether the residuary clause provides Marjorie with a fee simple in the residual estate, as found by the circuit court, or grants her a life estate, as argued by James and Sean. In answering this question, our role is "to construe the will which the testator has made and not to speculate as to his intention, or to make a will for him." *Jackson v. Fidelity & Deposit Co.*, 269 Va. 303, 310, 608 S.E.2d 901, 904 (2005). We must determine the intention of the testator from the language which he has used, and if the meaning of that language is plain, the will must be given effect accordingly. *Jimenez v. Corr*, 288 Va. 395, 413, 764 S.E.2d 115, 123 (2014). To ascertain a testator's intention "the whole will must be examined" and "effect should be given to all [its] parts . . . , as far as possible." *Haag v. Stickley*, 239 Va. 298, 302, 389 S.E.2d 691, 694 (1990). Once ascertained, this intention serves "as the polar star to guide and direct us." *Roller v. Shaver*, 178 Va. 467, 472, 17 S.E.2d 419, 422 (1941) (quoting *Trice v. Powell*, 168 Va. 397, 401-02, 191 S.E. 758, 760

4

(1937)).

Generally, a deed or will is construed to pass the greatest estate which the language employed is capable of conveying "unless a contrary intention appears in the [instrument]." *Goodson v. Capehart*, 232 Va. 232, 237, 349 S.E.2d 130, 134 (1986) (citing Code § 55-11); 2 T.W. Harrison & James P. Cox, Harrison on Wills and Administration for Virginia and West Virginia § 19.13, at 19-30 (4th ed. 2007) ("[A] testator shall be presumed to devise the entire estate which he owns unless a contrary intention appears from the will." (citing Code § 55-11)). Thus, while "[n]o specific words are required to create a life estate," *Gaymon v. Gaymon*, 258 Va. 225, 231, 519 S.E.2d 142, 145 (1999), a testator's intention to convey such an estate must be plainly manifested in the will. Harrison, *supra*, at 19-30. Such an intention can be manifested either by express language granting an estate "for life," or by implication. *Edwards v. Bradley*, 227 Va. 224, 229, 315 S.E.2d 196, 199 (1984) (citation omitted).

The residuary clause in testator's will does not expressly grant the residual estate to Marjorie "for life." However, it does state that "[i]t is [testator's] *intention* that . . . *upon [Marjorie's] death*," the assets remaining in the residual estate pass to Sean, in trust. (Emphases added). This intention is repeated later in the residuary clause, when testator explains that his and Marjorie's "accounts are to be kept separate so that, *at the time of our respective deaths*, any assets remaining from [his] estate will be used for the care and welfare of [his] children." (Emphasis added.) These phrases signify a desire to restrict Marjorie's interest in the residual estate and, as we have previously held, can be "fully equivalent to the words '*for life*.'" *Robinson v. Robinson*, 89 Va. 916, 918-19, 14 S.E. 916, 917 (1892) (emphasis in original) (interpreting the words "at their death" in a will as "show[ing] clearly the intention of the testator to limit the estate given . . . to an estate for life").

Moreover, the residuary clause explicitly states that it is testator's "intention that [Marjorie] *use* the assets of [the residual] estate to provide for her health and support, and to continue providing for the health, support and education of . . . Sean."  (Emphasis added.)  The word "use," in this context, implies "only the right to use and enjoy the benefit of [property conveyed]."  *Roller*, 178 Va. at 474, 17 S.E.2d at 423 (quoting *Hurt v. Hurt*, 121 Va. 413, 422, 93 S.E. 672, 674 (1917)).  And in this case, the right to use it is granted only for the expressly stated purposes.  *Walker v. Clements*, 216 Va. 562, 564, 221 S.E.2d 138, 140 (1976) (The word "use" "does not import any power of disposition . . ., but [actually] denotes the contrary." (quoting *Roller*, 178 Va. at 474, 17 S.E.2d at 423)).

These limitations, taken as a whole, manifestly demonstrate testator's intention to restrict Marjorie's interest in the residual property.  He intended that she use it for the purposes described in the will during her life, and then for the property to pass to Sean, in trust.  While the residuary clause at no point explicitly grants the residual estate to Marjorie "for life," we conclude that it nevertheless creates a life estate by implication, impaired to the extent of the limitations expressed therein.  *See Hickman v. Hickman*, 156 Va. 659, 664-65, 159 S.E. 145, 146-47 (1931).  Any other construction would render most of its language meaningless.

Marjorie seeks to avoid the import of the above language by arguing that the residuary clause also gives her an absolute power to dispose of the residual property.  She bases her argument on the doctrine that when a will gives an absolute power of disposal to the first taker of property, a life estate in that property can be created only by "express" language.  *Robinson v. Caldwell*, 200 Va. 353, 356, 105 S.E.2d 852, 854 (1958) (citing Code § 55-7).

Marjorie's argument relies upon the following language in the residuary clause:  "It is my intention that . . . upon [Marjorie's] death *any remaining assets* of this estate pass to [Sean]."

6

(Emphasis added.) In *Trustees of Duncan Memorial Methodist Church v. Ray*, 195 Va. 803, 804, 80 S.E.2d 601, 602 (1954), we interpreted a will that gave the estate to the testator's wife and then directed that, at the "wife['s] death, *the remainder of what may be left*, is to be divided equally between [an orphanage and a church]." (Emphasis added.) We reasoned that because this language necessarily contemplates that nothing may in fact remain at the wife's death, the will granted the wife an absolute power of disposition over the estate property and, therefore, a fee simple. *Id.* at 809, 80 S.E.2d at 604-05. The gifts over to the orphanage and church of any undisposed property were void. *Id.* In Marjorie's view, we should similarly construe the "any remaining assets" language in the residuary clause as granting her an absolute power of disposition over the residual property.

However, "it often happens that the same identical words require very different constructions in different cases, according to the context and the peculiar circumstances of each case." *Ward v. Ottley*, 166 Va. 639, 642, 186 S.E. 25, 26 (1936) (quoting *Rhett v. Mason*, 59 Va. (18 Gratt.) 541, 560 (1868)). For in all cases the testator's intention is our paramount concern, and that intention must be ascertained by examining the will as a whole, not by reading phrases out of their context. *Gaymon*, 258 Va. at 230, 519 S.E.2d at 145 (distinguishing "similar" "phrases" in wills based upon the different "context[s] in which they appear").

Along with directing the disposition of the residual property following Marjorie's death, the residuary clause in this case places limitations on Marjorie's use of the property during her life by stating, "[i]t is my intention that [Marjorie] use the assets of [testator's] estate to provide for her health and support, and to continue providing for the health, support and education of my son SEAN while he is a minor." It then unambiguously states, "[a]t no time and under no circumstances should any of my estate's assets or personal property pass to or be used on behalf

7

of DEBORA Y. FEENEY, BRIAN D. PATTERSON, CASEY T. PATTERSON, or JAMES P. PATTERSON."

These limitations on Marjorie's ability to use the estate are irreconcilable with an absolute power of disposition. Phrases such as "any remaining assets" are not talismanic words that automatically grant the first taker such power. *See Walker*, 216 Va. at 565, 221 S.E.2d at 141 (declining to interpret the phrase "what ever is left" as granting "the complete right of disposition," but rather concluding that it meant that property which was "not worn out, lost, stolen or misplaced," and acknowledging that the property "could be depleted and lessened through 'use' during [the first taker's] lifetime"). As always, a testator's intent must be determined from the will as a whole, examining each phrase in context. Doing so in the present case demonstrates that the residuary clause grants Marjorie a life estate by implication in the residual property, impaired to the extent of the limitations expressed therein.[*]

## B. Judicial Instructions

James and Sean next argue that the circuit court erred by failing to order the estate to pay their attorneys' fees. Generally, attorney's fees are not awarded absent a contractual or statutory provision to the contrary. *Lannon v. Lee Conner Realty Corp.*, 238 Va. 590, 594, 385 S.E.2d 380, 382-83 (1989). However, James and Sean contend that there is an exception in the context of wills and trusts known as the doctrine of judicial instructions. Under this doctrine, "[i]f judicial instructions are needed to interpret an *ambiguous* will or trust, all expenses of that

---

[*] As the residuary clause does not give Marjorie an absolute right of disposition over the residual property, neither the doctrine established in *May v. Joynes*, 61 (20 Gratt.) 692 (1871) nor Code § 55-7 are applicable. *Walker*, 216 Va. at 563, 221 S.E.2d at 139; *Roller*, 178 Va. at 475, 17 S.E.2d at 423. Additionally, in light of our holding, we need not consider whether the circuit court erred in granting summary judgment as to Counts II and III of the original complaint. The circuit court concluded Counts II and III were moot after it granted summary judgment on Count I. As we reverse the court's ruling as to Count I, Counts II and III are viable on remand.

litigation, including attorney's fees, are to be paid by the estate." W. Hamilton Bryson, Bryson on Virginia Civil Procedure § 14.04, at 14-15 (5th ed. 2017) (emphasis added) (citing *Allison v. Allison*, 101 Va. 537, 576, 44 S.E. 904, 917 (1903)); *see also* 76 Am. Jur. 2d, Trusts § 670, at 683-84.

This Court has not explicitly recognized the doctrine of judicial instructions, *see DuPont v. Shackelford*, 235 Va. 588, 595, 369 S.E.2d 673, 677 (1988), and we need not do so today. For even if the doctrine exists in Virginia law, an ambiguity in the provisions of the instrument necessitating litigation is a condition precedent for its application. *See In re Estate of Smith*, 385 N.E.2d 363, 365 (Ill. App. 1979) ("[T]he costs of litigating a will construction case are borne by the estate . . . [when] the testator's ambiguous expression of his intention necessitated the action." (citations omitted)). James and Sean have, throughout this litigation, consistently maintained that its language is clear and unambiguous. Thus, even if the doctrine of judicial instructions exists in the Commonwealth, it does not apply under the circumstances of this case.

III.    Conclusion

The residuary clause unambiguously grants Marjorie a life estate in the residual property. We therefore reverse the circuit court's ruling and remand for further proceedings consistent with this opinion. We affirm the circuit court's refusal to award attorneys' fees under the doctrine of judicial instructions.

*Affirmed in part,*
*reversed in part,*
*and remanded*.