COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Ortiz, Raphael and Lorish
Argued at Fairfax, Virginia


JONATHAN PALEVSKY

                                                    MEMORANDUM OPINION* BY
v.         Record No. 1466-24-4                     JUDGE DANIEL E. ORTIZ
                                                    MARCH 3, 2026

THE JOHNS HOPKINS HEALTH SYSTEM
 CORPORATION, ET AL.


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Lisa B. Kemler, Judge

George O. Peterson (Carissa L. Peterson; Law Office of George O.
Peterson, PLC, on briefs), for appellant.

John P. O'Herron (Timothy A. Richard; Jennifer A. DeRose;
ThompsonMcMullan, P.C.; Maryland Office of the Attorney
General, on brief), for appellee Baltimore City Community
College.

No brief or argument for remaining appellees.


This appeal concerns the interpretation of Florence Rochelle Joseph's ("Ms. Joseph")

holographic will. The sole controversy under the will is whether it devises a portion of

Ms. Joseph's estate to Jonathan Palevsky ("Mr. Palevsky") personally, or to WBJC-FM radio,

subject to Mr. Palevsky's discretion. On appeal, Mr. Palevsky argues that the circuit court erred

denying his motion for summary judgment because the plain language of the fourth beneficiary

clause clearly identifies him as the intended beneficiary. Moreover, he asserts that the circuit court

improperly weighed extrinsic evidence to interpret the fourth beneficiary clause consistent with the

will's overarching "charitable intent." Because the plain language of the will was ambiguous and

_____

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

extrinsic evidence demonstrated that Ms. Joseph intended to benefit WBJC-FM, not Mr. Palevsky personally, we affirm.

BACKGROUND

Ms. Joseph died testate August 23, 2022. She wrote her will by hand and without legal assistance. The will directs the executor of her estate to sell Ms. Joseph's personal possessions and assets and combine the proceeds of the sale for six named beneficiaries. The relevant portion of the holographic will provides:

**First Beneficiary 40 (forty)%**
Dr. Lee Hunter Riley, III, chief of spinal surgery, Johns Hopkins University Hospital, as the surgeon who cured stenosis of my lumber [sic] back. I leave the following amount as a contribution to Johns Hopkins according to the discretion of Dr. Riley.

**Second Beneficiary as stated**
Kenneth Ribyat, Morgan Stanley, Alexandria, Virginia, as the watchful eye Financial Manager of my account. I leave my investment in Berkshire Hathaway Mondelez stock for his personal portfolio.

**Third Beneficiary 30 (thirty)%**
The Smithsonian Institution Associate Learning Program, Washington, D.C. for 50 years of my continuing education and pleasure, to be used at their discretion.

**Fourth Beneficiary 15 (fifteen)%**
Jonathan Palevsky, WBJC-FM., Voice of Baltimore Community College Rad[i]o, as the source of my quality musical entertainment. I leave the amount to be used in his discretion.

**Fifth Beneficiary 15 (fifteen)%**
Alexandria Barrett Branch Library, point of contact Linda Wesson, Division Chief, Administrative Services, the amount to be used at her discretion.

**Sixth Beneficiary**
All residual funds remaining from my estate should be contributed to the Metropolitan Opera, Lincoln Center, New York to be used at the discretion of the General Manager.

After Ms. Joseph's death, her executor filed a petition for aid and direction under Code § 8.01-184 to ascertain the beneficiaries under the will. All interested parties agree that the only clause at issue is the fourth beneficiary clause which names two potential beneficiaries—Jonathan Palevsky or Baltimore City Community College ("the College"). Mr. Palevsky is a radio host for WBJC a.k.a. WBJ-FM, Voice of Baltimore Community College Radio. WBJC-FM is "a public, non-commercial radio station founded by the College." The College is "the sole license holder of WBJC-FM and its board oversees the radio station."

The executor asked the court to determine whether the beneficiary under the will's fourth clause is Mr. Palevsky, as an individual, or the College as the operator and sole licensee of WBJC-FM radio. In response, both Mr. Palevsky and the College filed cross motions for summary judgment. The court denied both motions, holding that it "require[d] extrinsic evidence to determine the intention of Ms. Joseph."

During the trial, two witnesses presented testimony: Ms. Joseph's husband, William Poggenburg and Mr. Palevsky.[1] Mr. Poggenburg testified that he and his wife had conversations concerning her intended beneficiaries. He said that she had few remaining relatives, and she wanted to do something "worthwhile" with her money. Mr. Poggenburg stated that his wife loved the arts and music and "wanted to make the arts available to as many people as possible." He noted that she "enjoyed listening to classical music on the radio and preferred the classical music programing of WBJC-FM." Finally, he said that Ms. Joseph knew Mr. Palevsky but that "she never talked about wanting to leave money directly to Mr. Palevsky." Rather, she always said she wanted to leave money for the "benefit of the station" not "to the general fund of BCCC."

---

[1] The court held an evidentiary hearing, but Mr. Palevsky did not file a transcript or statement of facts in lieu of a transcript. However, the court issued a six-page letter opinion that summarized the relevant testimony. The facts recited above come from this opinion.

Mr. Palevsky testified that he is the program director for WBJC-FM and he supervises the six-person staff in charge of curating the classical music program. Mr. Palevsky said that he led musical tours on behalf of WBJC-FM and Ms. Joseph attended one of the tours. He stated that during the tour, he had a brief conversation with her. On the last night of the tour the participants signed a menu as a memento, and Ms. Joseph wrote, "thank you for restoring our music we all miss. Florence." Mr. Palevsky conceded that he never spoke with Ms. Joseph about her estate planning.[2]

After the trial, the court issued a letter opinion noting that when the will was read in its entirety with the parol evidence, a "general scheme" of "charitable intent" permeated the bequests. Thus, it held that the College was the intended beneficiary under the fourth clause with the funds to be used at Mr. Palevsky's discretion. Mr. Palevsky timely appealed.

ANALYSIS

Mr. Palevsky challenges the circuit court's interpretation of the fourth beneficiary clause, arguing the will's plain language demonstrates that Ms. Joseph intended for him, as an individual, to receive the bequest. He further contends that the trial court erred in finding that WBJC-FM was the intended beneficiary due to the will's overarching "charitable intent." We disagree.

On appeal, our role is "to construe the will which the testator has made and not to speculate as to his intention, or to make a will for him." *Jackson v. Fid. & Deposit Co.*, 269 Va. 303, 310 (2005). "The 'cardinal principle' of will construction is that the intention of the testator controls." *Larsen v. Stack*, 298 Va. 683, 688 (2020) (quoting *Gillespie v. Davis*, 242 Va. 300,

_____

[2] The court also admitted a type-written draft of the will with handwritten edits. The typewritten draft clarified that the first beneficiary clause directed the gift to Johns Hopkins. It also took out a sentence in the fourth beneficiary clause stating "Mr. Palevsky's program choices and commentary are exemplary."

303 (1991)).  The court may consider extrinsic evidence "only if the language of the will is ambiguous, that is, susceptible to more than one interpretation."  *Gaymon v. Gaymon*, 258 Va. 225, 230 (1999) (citing *Gillespie*, 242 Va. at 303-04).  "In such cases, '[p]arol evidence is admissible to enable the court to identify the property intended to be given by will, or to assist it in determining the quantum of interest which is to pass by the will.'"  *Larsen*, 298 Va. at 692 (alteration in original) (quoting *Parsons' Adm'r v. Fitchett*, 148 Va. 322, 329 (1927)).  It is within this framework that we evaluate Mr. Palevsky's assignments of error.

    *I.  The circuit court did not err denying Mr. Palevsky's motion for summary judgment.*

The circuit court correctly denied Mr. Palevsky's motion for summary judgment because the plain language of the fourth beneficiary clause is ambiguous and the four corners of the will do not clarify who Ms. Joseph intended to name as beneficiary.

"In an appeal from a circuit court's decision to grant or deny summary judgment, we review the application of the law to undisputed facts de novo."  *Ranger v. Hyundai Motor Am.*, 302 Va. 163, 169 (2023) (quoting Rule 3:20).  Likewise, "[w]e review de novo the circuit court's interpretation of the legal effect of [a] will."  *Larsen*, 298 Va. at 688.  "Summary judgment is appropriate in cases where no 'material fact is genuinely in dispute' and the moving party is entitled to judgment as a matter of law."  *Ranger*, 302 Va. at 169.

    *A.  The fourth beneficiary clause is ambiguous.*

In a will contest, summary judgment should be granted only if the instrument's plain language clearly confers the testator's intent.  *See Feeney v. Feeney*, 295 Va. 312, 316 (2018).  When determining the intention of a testator, we must look at the language of the will and "if the meaning of that language is plain, the will must be given effect accordingly."  *Id.* at 317 (quoting *Jimenez v. Corr*, 288 Va. 395, 413 (2014)).  Consistent with the familiar principles of interpretation, "[t]he primary significance of words should ordinarily attach and does attach,

unless it is manifest from the will itself that other definitions are intended." *Rady v. Staiars*, 160 Va. 373, 376 (1933).

Here, the parties requested that the circuit court interpret the fourth beneficiary clause, which provides: "Jonathan Palevsky, WBJC-FM, Voice of Baltimore Community College Radio, as the source of my quality musical entertainment. I leave the amount to be used in his discretion." Based on the plain language, the circuit court correctly found that the clause was susceptible to two plausible interpretations.

The clause could mean that Ms. Joseph intended to devise fifteen percent of the proceeds of her estate to Mr. Palevsky as an individual. Under this interpretation, the first sentence fragment functions as an identifying clause, explaining *who* Jonathan Palevsky is and *why* he matters to the testator. The second sentence is the operative clause identifying both the recipient of the funds and the manner of their use. The use of the pronoun "his" confirms that the funds go to an individual to be used at his discretion, not to an entity.

Or, the plain language of the bequest could indicate that Ms. Joseph intended to devise fifteen percent of the proceeds of her estate to WBJC-FM, with the funds to be used at Mr. Palevsky's discretion. In this interpretation, the reference to WBJC-FM in the identifying clause is not merely a reference to Mr. Palevsky's employer. Instead, Ms. Joseph is naming the intended beneficiary. Because Ms. Joseph did not explicitly identify the intended beneficiary in the operative clause, the use of the word "his" merely controls how the funds are spent once WBJC-FM receives the funds.

When, as is the case here, "the language of the will is ambiguous, that is, susceptible to more than one interpretation," the court may consider extrinsic evidence. *Gaymon*, 258 Va. at 230. But before the court turns to extrinsic evidence, we must evaluate the will as a "whole" and

attempt to harmonize the fourth beneficiary clause with the other provisions. *See Feeney*, 295 Va. at 318.

> *B. Even when read in context with the will, the fourth beneficiary clause remains ambiguous.*

Even when read with the will in its entirety, the fourth beneficiary clause's intended recipient remains unclear. When determining the intention of the testator, "'[t]he whole will must be examined' and 'effect should be given to all [its] parts . . ., as far as possible.'" *Feeney*, 295 Va. at 317 (quoting *Haag v. Stickley*, 239 Va. 298, 302 (1990)). The court must presume "that [the testator] knew the legal effect of the words used in the one instance and omitted in the other." *Rennolds v. Branch*, 182 Va. 678, 693 (1944) (finding that use of a term in one bequest created a condition precedent and its omission in the following bequest indicated the testator had "in mind a different object to be accomplished").

Each of the will's six beneficiary clauses vary in language and structure. The first, second, fourth, and fifth clauses identify an institution and name an employee of each institution. The first and fifth clauses devise a portion of Ms. Joseph's estate to the identified institution subject to the discretion of the named employee. The first clause names "Dr. Lee Hunter Riley, III, chief of spinal surgery" as the employee and "Johns Hopkins University Hospital" as the institution and directs the funds "as a contribution to Johns Hopkins according to the discretion of Dr. Riley." Similarly, the fifth clause names "Alexandria Barrett Branch Library" as the institution with "point of contact Linda Wesson, Division Chief" as the employee. Once again, the instrument directs the funds to the entity and vests discretion in Ms. Wesson.

Mr. Palevsky contends that because the fourth beneficiary clause does not mirror the first or fifth bequests, he is the sole intended beneficiary. He argues that unlike the first beneficiary clause, the fourth does not contain an explicit grant to WBJC-FM. Moreover, he asserts that unlike the fifth bequest, he is not named solely as the "point of contact." Thus, he contends that

if Ms. Joseph intended to leave the funds to WBJC-FM, she could have used explicit language like that found in the first and fifth clauses. True, we must presume that Ms. Joseph "knew the legal effect of words used in one instance and omitted in the other," *Rennolds*, 182 Va. at 693, but this argument ignores the text of the second beneficiary clause.

The language of the second beneficiary clause demonstrates that Ms. Joseph understood how to devise a gift directly to an individual rather than an entity. Like clauses one, four, and five, the second clause names both an entity, "Morgan Stanley," and an employee, "Kenneth Ribyat." But unlike the other clauses, the will leaves Ms. Joseph's stock portfolio to Mr. Ribyat "for his *personal* portfolio." Despite naming Morgan Stanley, Ms. Joseph employed specific language to convey her intent to benefit Mr. Ribyat individually. The second clause indicates that when Ms. Joseph sought to devise a gift to an individual, she did so with explicit language. Yet she chose not to use such language in the fourth beneficiary clause.

Finally, all the beneficiary clauses that leave gifts to institutions tie the gift to the "discretion" of an individual. The first clause grants a gift to Johns Hopkins University "according to the discretion of Dr. Riley." The third beneficiary clause grants the Smithsonian a portion of the estate "to be used at their discretion." Likewise, the fifth beneficiary clause grants "Alexandria Barrett Branch Library funds to be used at the Division Chief's discretion." And the sixth clause leaves the residual funds of the estate to the Metropolitan Opera "to be used at the discretion of the General Manager." Ms. Joseph's use of the word *discretion* seems to signal a grant to a charitable entity. Like the above referenced clauses, the fourth beneficiary clause conditions the use of funds on Mr. Palevsky's discretion. But without extrinsic evidence, the circuit court could not definitively discern the testator's intent. Thus, the court properly denied Mr. Palevsky's motion for summary judgment.

*II. The trial court properly found that WBJC-FM was the intended beneficiary under the will.*

In his second assignment of error, Mr. Palevsky contends: (1) the circuit court improperly limited its decision to the four corners of the will; (2) erroneously concluded that the will had a general charitable scheme guiding distribution; and (3) failed to consider earlier drafts of Ms. Joseph's will. When a court sits without a jury, its judgment stands "unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." *Black v. Edwards*, 248 Va. 90, 92-93 (1994) (quoting Code § 8.01-680). Because parol evidence demonstrated a general scheme of "charitable intent," we affirm the circuit court's conclusion that Ms. Joseph intended to convey a gift to WBJC-FM.

> *A. Mr. Palevsky did not waive his second assignment of error under Rule 5A:8(b)(4)(ii).*

As a preliminary matter, the College contends that Mr. Palevsky waived his second assignment of error under Rule 5A:8(b)(4)(ii) by not filing a transcript or statement of facts from the evidentiary hearing. While the decision to review a case on appeal without a relevant transcript is "the rare exception rather than the general rule," *Wolf v. Commonwealth*, 6 Va. App. 640, 644 (1988), this case presents such exception.

Under Rule 5A:8(b)(4)(ii), "[w]hen the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission will not be considered." In other words, when the transcript is "indispensable to the determination of the case, then the requirements for making the transcript [or statement of facts] a part of the record on appeal must be strictly adhered to." *Bay v. Commonwealth*, 60 Va. App. 520, 528 (2019) (alteration in original) (quoting *Turner v. Commonwealth*, 2 Va. App. 96, 99 (1986)).

Whether a transcript is necessary depends on the contents of the record and the issue on appeal. A transcript is unnecessary when the court can resolve the issue by reviewing other portions of the record. *See Veldhuis v. Abboushi*, 77 Va. App. 599, 605-07 (2023) (holding that a transcript was unnecessary to resolve an appeal challenging an element of adverse possession because the record included a letter opinion detailing the circuit court's factual findings and summarizing testimony regarding the parties' use of disputed property). In contrast, when the record does not contain the basis for the lower court's decision, a transcript or statement of facts is necessary. *See, e.g.*, *Mertz v. Sullivan*, 82 Va. App. 762, 791-92 (2024) (finding that a transcript was necessary to resolve an appeal challenging a trial witness's valuation of a disputed asset because without the full testimony the court was "without any basis" to find error on the part of the circuit court); *Town of Iron Gate v. Simpson*, 82 Va. App. 38, 49-50 (2024) (ruling that a transcript was indispensable to determine whether circuit court erred denying a motion to recuse because the court had "no way of knowing precisely the issues raised, waived, or rejected below").

Here, we can evaluate Mr. Palevsky's second assignment of error without a transcript. First, the assignment of error does not require this court to evaluate witness testimony or credibility. Instead, Mr. Palevsky asserts that the circuit court failed to weigh extrinsic evidence and relied only on the language of the will to determine the testator's intent. Second, the circuit court opinion contains the "basis" for its opinion. The six-page letter opinion summarized the testimony from the evidentiary hearing and detailed the court's factual findings and analysis. As such, a transcript is not "indispensable" to resolving this case on the merits.

*B. Extrinsic evidence supported the circuit court's determination that Ms. Joseph intended to devise her fourth bequest to WBJC-FM.*[3]

Parol evidence supports the circuit court's finding that Ms. Joseph had a general "charitable" intent influencing the distribution of her estate. When interpreting a will, "[t]he general intent of a testator, often referred to as the dominant intent, clearly and definitely expressed in his will prevails over a particular or special intent expressed in a part of it." *Kling v. Va. Tr. Co.*, 215 Va. 226, 229 (1974). "If, upon a reading of the whole will, there appears to be a general scheme for the disposition of the property pervading as a whole, this general scheme will not be defeated by isolated clauses." *Id.*

The letter opinion summarized the evidence used to ascertain Ms. Joseph's charitable intent. At the hearing, Ms. Joseph's husband testified that his wife had "few remaining relatives" and she wanted to do "something worthwhile with her money" to "make the arts available to as many people as possible." When asked about Mr. Palevsky, the husband stated that Ms. Joseph "knew that Mr. Palevsky was the program director at WBJC-FM and was a fan of his" but "she never talked about wanting to leave money directly to Mr. Palevsky." Instead, "she always said she wanted to leave money for the benefit of the station." Mr. Palevsky did not offer contradicting testimony. Indeed, he conceded that he met Ms. Joseph for the first time in 2022, five years after she drafted the will, and he admitted that the two never discussed Ms. Joseph's estate. Based on

---

[3] While Mr. Palevsky asserts that the circuit court failed to weigh Ms. Joseph's edits to her initial draft of the will, trial courts are not required to "state for the record the reasons underlying their decisions." *Shannon v. Commonwealth*, 289 Va. 203, 206 (2015). "Mere silence on the assertions presented by a party does not create a presumption that the court abused its discretion by failing to consider such arguments." *Cedeno v. For Every Body, LLC*, No. 1842-22-4, slip op. at 9 (Va. Ct. App. Apr. 23, 2024); *see* Rule 5A:1(f) (while not binding, unpublished case may be cited as persuasive authority). More importantly, without a trial transcript we have no way of knowing if these arguments were preserved. Thus, we find this argument unpersuasive.

the evidence presented, the circuit court reasonably concluded that Ms. Joseph had a general charitable scheme guiding the disposition of her estate.

Next, the circuit court determined that when the will is read in light of Ms. Joseph's general charitable intent, the fourth beneficiary clause mirrors the other clauses leaving bequests to institutions, not individuals. Again, we find this interpretation reasonable. In each of the unchallenged beneficiary clauses containing the phrase "to be used at his [or her or their] discretion," Ms. Joseph identifies a charitable organization or entity as the beneficiary. Of course, the term "discretion" alone does not demonstrate the will's charitable intent. Rather, Ms. Joseph's repetition of the word "discretion" signals that each clause containing the term has the same distribution scheme: a scheme that leaves a portion of Ms. Joseph's estate to a charitable entity, subject to the discretion of an individual.

Contrasting the second beneficiary clause reinforces this interpretation, as it is the only clause that directs a gift to an individual for personal use.[4] In the second clause, Ms. Joseph omitted the word "discretion" and instead devised her stock portfolio to Mr. Ribyat for his "personal portfolio." Had Ms. Joseph intended to leave funds to Mr. Palevsky for his personal use, she could have mirrored the language of the second clause. Instead, she used the term "discretion," a word employed when she intended to gift a portion of her estate to a charitable organization or entity. Analyzing the will with Ms. Joseph's intent in mind, the circuit court was not plainly wrong when it found that Ms. Joseph intended to devise a portion of her estate to WBJC-FM, subject to the discretion of Mr. Palevsky.

---

[4] Mr. Palevsky argues that the second beneficiary clause rebuts the circuit court's finding of a scheme of charitable intent. But the circuit court specifically considered the second clause and concluded that an isolated clause devising a gift to an individual could not defeat the testator's general intent. *See Kling*, 215 Va. at 229.

- 12 -

CONCLUSION

Given that the language of the will was ambiguous, and the extrinsic evidence demonstrated that Ms. Joseph's will followed a general "charitable" scheme of distribution, the circuit court did not err denying summary judgment and naming WBJC-FM as the intended beneficiary. Accordingly, we affirm.

*Affirmed.*